Argued February 7, affirmed March 4, costs retaxed March 11, 1924.

## W. L. HUGHES *v.* FRANK HOLMAN, MRS. FRANK HOLMAN, MRS. FRANK SPLAWN, MRS. C. A. RICE AND CLEM SWENSON.

(223 Pac. 730.)

**Husband and wife—Evidence Held to Show Husband's Own Mis-conduct Caused Alienation of Wife's Affections.**

1. In an action for alienation of wife's affections, evidence *held* sufficient to show that husband's own misconduct caused the cool-ing of her affections, and did not show any acts by defendants from which malice could be implied.

---

1. Effect of fact that husband or wife of plaintiff in action for alienation of affections was the active and aggressive party, see notes in 16 L. R. A. (N. S.) 742; 43 L. R. A. (N. S.) 332.

**Husband and Wife — Husband cannot Restrain Wife's Religious Worship.**

2.  A husband cannot restrain wife from enjoying her own religious opinions and to worship according to the dictates of her own reason or conscience, if she does not in her zeal disturb the public peace or rebel against his lawful authority.

**Husband and Wife—No Legal Duty on Members of Religious Sect to Co-operate With Husband to Prevent Wife from Attending Meetings.**

3.  In the absence of improper motives, members of a religious sect have a lawful right to invite a wife to attend services, if there is nothing unlawful, improper, or immoral in such services, and there is no legal duty on them to co-operate with husband to prevent her from attending and participating in such services, if merely because of his whim or prejudice he objects to her attending them.

**Husband and Wife—Acts Under Guise of Religious Teachings Intended to and Accomplishing Alienation of Wife's Affections Create Liability for Damages.**

4.  Acts done with the purpose of alienating a wife's affections, and which accomplish such alienation, render those committing such acts liable in damages to the injured spouse, notwithstanding the acts complained of may have been committed in the guise of religious teachings.

**Husband and Wife—Plaintiff must Show by Substantial Evidence Defendants' Acts Caused Alienation of Wife's Affections.**

5.  In an action for alienation of wife's affections, plaintiff must show by substantial evidence that the acts of which he complains were committed maliciously or from improper motives implying malice in law, and with the design and intent to alienate the affections of plaintiff's wife from him, and that such acts were the controlling cause which produced an estrangement between plaintiff and his wife.

**New Trial—Court may on Its Own Motion Set Aside Verdict and Judgment Where Evidence Insufficient.**

6.  Where evidence is insufficient to sustain the verdict, the trial court may set it aside and any judgment thereon, and the court may exercise this power on its own motion.

**Appeal and Error—Entry of Final Judgment on Motion for New Trial not Reversed, Where Result must be Same.**

7.  Though generally the trial court exceeds its power when, on motion for a new trial, it sets aside the verdict and enters final judgment without such trial, its action in so doing will not be reversed where justice has been done and it appears that if a new trial had been granted the same result must have resulted.

6.  Right of court to grant new trial in its own motion, or on grounds other than those urged by the moving party, see notes in 14 Ann. Cas. 65; Ann. Cas. 1914A, 412; 40 L. R. A. (N. S.) 291.
    See 4 C. J., p. 1061; 30 C. J., pp. 1122, 1125, 1135, 1144; 29 Cyc. 832, 921.

From Polk: H. H. BELT, Judge.

Department 1.

AFFIRMED.   COSTS RETAXED.

For appellant there was a brief and oral argument by *Mr. W. C. Winslow.*

For respondent there was a brief over the names of *Mr. Henry S. Westbrook, Mr. Waldemar Seton, Mr. E. K. Piasecki* and *Mr. Frank Schlegel,* with an oral argument by *Mr. Westbrook.*

McCOURT, J.—This is an action instituted by plaintiff against the defendants to recover damages for the alleged alienation by defendants of the affections of plaintiff's wife. Plaintiff, by his complaint, charges in substance that on or about the first day of November, 1919, the defendants entered into a conspiracy to alienate the affections of plaintiff's wife from plaintiff and to disrupt plaintiff's home and to destroy the peace and tranquillity thereof, and that the defendants, in furtherance of such conspiracy, did, by artifice, inducement, design and persuasion, alienate the affections of plaintiff's wife, thereby causing her to disregard and ignore plaintiff in all transactions and all relations and to disregard and ignore her family duties as a mother to her children. Plaintiff further averred that the defendants, by teaching plaintiff's wife false doctrines and theories, induced her to refrain from medical treatment for the relief and cure of a cancer, with which she was suffering; that such medical treatment had been offered to her by the plaintiff from skilled and expert physicians, and that on account of the refusal of plaintiff's wife to submit to the same, which refusal was induced by the defendants, her

110 Or.—27

health has been greatly injured, and she has been reduced to such a physical condition as to be no longer able to care for her children or perform other household and family duties, and her malady has become incurable, all to the damage of plaintiff in the sum of $20,000.

Defendants, by their answer, denied all the allegations of plaintiff's complaint, and affirmatively alleged that defendants, in conjunction with other persons, meet in the City of Dallas, Oregon, to worship God, and that their meeting place is known as the Apostolic Faith Mission; that plaintiff's wife has for some time attended said meetings and joined in said worship of her own free will and volition and without any inducement, coercion or other influence exerted upon her by the defendants, or either or any of them, and that the estrangement between plaintff and his said wife, if any exists, was wholly completed and consummated long prior to the time plaintiff's wife started to worship with the defendants, and that the defendants at no time and in no manner contributed to the alienation of the affections of plaintiff's wife from plaintiff, and that they did not at any time advise or counsel plaintiff's wife regarding her private life, material matters or her relations with her husband.

The affirmative matter in the answer is denied by plaintiff's reply.

The cause being at issue, a jury was had therein, resulting in a verdict in favor of plaintiff, and against all the defendants, in the sum of $2,500. The Circuit Court did not enter judgment upon the foregoing verdict, as directed by Section 201, Or. L., but upon its own motion, entered the following order and judgment:

"Wherefore it appearing to the Court that the above verdict is contrary to law in that there is no evidence to support the same or any evidence to show that there was a conspiracy or a concerted design on the part of the defendants, or any of them, to alienate the plaintiff's wife's affections; and for a further reason at this time, it appears to the Court that the complaint herein fails to state facts sufficient to constitute a cause of action.

"Therefore, it is ordered and adjudged that the said verdict be and is hereby set aside and held for naught. That said action be dismissed and that defendants recover against plaintiff herein their costs and disbursements, taxed and allowed at $——."

Plaintiff appeals from the order and judgment above set forth, and assigns error as follows:

"I.

"The Court erred in not entering judgment upon the verdict in favor of appellant and against respondents.

"II.

"The Court erred in entering judgment for the respondents and against appellant.

"III.

"The Court erred in setting aside the verdict and holding the same for naught."

1. A brief statement of the situation and the acts of the defendants, upon which it is sought to charge defendants with liability as shown by the evidence, is necessary in order to make clear the decision of the questions presented by plaintiff's assignments of error. It is important to note in that connection that during the trial defendants seasonably interposed a motion for nonsuit and also a motion to direct the jury to return a verdict in favor of the defendants, both of which motions were overruled by the court.

The relations of the parties and those phases of their several characters which furnish a clue to the motive or intent accompanying the acts hereinafter specified committed by each of them respectively may be gathered from the uncontroverted facts in the case and the reasonable deductions to be drawn therefrom.

The defendants, all of whom are presently named and described, for many years, and during the period covered by this controversy, attended in Dallas, Oregon, the mission or place of worship of a religious organization known as the Apostolic Faith, the tenets and creed of which they in good faith devoutly believed and earnestly endeavor to follow. Among the tenets of the creed of the Apostolic Faith is the power of Jesus Christ to heal bodily ailments, and that divorce is forbidden by the Word of God.

Frank Holman is a farmer who has lived near Dallas for twenty-one years. Clem Swenson is a fruit-grower who has lived in the vicinity of Dallas for nine years. Mrs. Frank Splawn is an elderly woman who lives across the street from plaintiff, and has known him since he was a boy. Mrs. C. A. Rice lives adjacent to plaintiff's house, and is a sister of plaintiff's wife.

Plaintiff and his wife were married June 15, 1910; from the date of their marriage until the time of the trial, plaintiff and his wife lived together in Dallas, Oregon; they did not separate or live apart at any time. Two children, a girl and a boy, ten and twelve years of age, respectively, both living, were born of the marriage. During the time covered by the transactions in this case, plaintiff and his wife resided in a dwelling-house erected upon a lot which plaintiff's wife owned at the time of their mar-

riage, and toward the erection of which she contributed a substantial sum of money. Plaintiff earned a living for himself and family by working as a common laborer, most of the time in sawmills. Plaintiff is a quick-tempered, rough-spoken, violent man, who expects and attempts to exact from his wife complete obedience, not only to his instructions and directions, but to his whims as well. He is unmanly, belligerent and truculent in the presence of women and of men who, in case of physical violence offered them, practice the Scriptural injunction to turn the other cheek.

The evidence fairly indicates that plaintiff's wife is a dutiful woman, reasonably submissive to plaintiff's demands, and quite as patient with his explosive temper and unmanly conduct as could be expected of any self-respecting wife. Her health had not been good since the birth of her first child.

· The only evidence offered by plaintiff in support of his charge that defendants alienated his wife's affections is contained in the testimony of plaintiff given as a witness in his own behalf. We will now state the substance of that testimony.

At the time of the marriage of plaintiff and his wife, or shortly thereafter, plaintiff exacted a promise from his wife that she would not attend the religious services of the Apostolic Faith.

In February, 1918, Mrs. Splawn and Mrs. Rice invited plaintiff's wife to attend the religious services conducted by the members of the Apostolic Faith at their mission in Dallas. Plaintiff's wife accepted the invitation, and in the evening started to the mission in company with Mrs. Splawn and Mrs. Rice. Plaintiff interfered and objected to his wife attending the mission, and vociferously abused Mrs. Splawn and Mrs. Rice, and charged them with in-

terfering in his family affairs. Mrs. Splawn and Mrs. Rice both protested that they did not have any desire or intention of meddling in his family affairs, and asserted that their invitation to Mrs. Hughes to attend the mission was not given with that purpose. Plaintiff's wife thereupon yielded to plaintiff's objections, and returned with him to their home across the street.

Thereafter in February, 1919, plaintiff's wife was informed by a physician whom she had consulted that she was suffering from cancer of the breast. She was very much perturbed and downcast by this news, and supposed that she would not live long. Following the discovery that his wife was afflicted with cancer, plaintiff had some conversation with Dr. Bollman, of Dallas, concerning treatment of his wife by an X-ray specialist in Portland, and plaintiff claims, in his testimony, that he made arrangements for such treatment, and his wife refused to submit to the same. During this time plaintiff's wife, as might be expected, suffered from low spirits and impaired physical energy, and on account thereof lacked interest in her household affairs for some months. Her sister, the defendant Mrs. C. A. Rice, advised plaintiff's wife that she had better not depend on the doctors but trust God for her health.

Following that conversation, and in the month of November, 1919, plaintiff and his wife commenced attending religious services at the Apostolic Faith Mission in Dallas, and plaintiff, together with his wife, continued to attend those meetings and to join in the services there conducted for several months. Plaintiff's wife entered heartily and faithfully into the services in the earnest hope that thereby she might invoke a Divine Power that would heal her from the malady from which she was suffering. Her

fervor, augmented by the prayers and supplications of the defendants, prompted her to assume postures and execute contortions that displeased plaintiff, whose comments thereon caused defendants Mrs. Splawn and Mrs. Rice to question his sincerity in attending the mission. Plaintiff's wife felt that she had been benefited both physically and spiritually, and continued to attend the meetings in defiance of plaintiff's renewed objections presently mentioned.

In February, 1920, plaintiff suffered an attack of influenza, as did each of plaintiff's children. Plaintiff's wife nursed plaintiff and the children during their illness, and brought them through the same successfully. Plaintiff did not, after he recovered from his illness, again attend the mission, but vigorously denounced the members thereof, particularly the defendants, charging them with intermeddling in his family affairs, by encouraging his wife to attend the mission contrary to his wishes. Upon one occasion he violently assaulted the defendant Holman, and on numerous occasions spoke in a rough and unmanly way to both Mrs. Splawn and Mrs. Rice and also to Mrs. Holman. Plaintiff charged defendant Swenson with participating with the other defendants in interference with his domestic affairs. The defendants, when so charged by plaintiff, in each instance protested that they had not meddled in his family affairs, and that they did not feel that it was proper for them to prevent his wife from attending the mission if she desired to do so.

A large part of plaintiff's testimony consists of his version of what he said to the defendants and their replies on the occasions mentioned, rather than of any persuasion or influence exerted by defendants on plaintiff's wife.

During this latter period plaintiff constantly insisted that his wife convey to him the residence in which they lived, or at least a half interest therein. Several meetings were had between plaintiff and his wife and the defendants. One of these was had at plaintiff's residence and the others at the mission. At each meeting, plaintiff insisted that the defendants persuade his wife to make the conveyance mentioned, and also that they require her to cease attending the mission. The defendants declined to exert the requested influence upon plaintiff's wife, stating in effect that they felt that it was inappropriate for them to offer any advice concerning the conveyance, and further that they felt that if plaintiff's wife desired to attend the mission, and behave herself while there, defendants properly could not interfere to prevent or restrain her from so doing. It is manifest from the evidence that the defendants and also plaintiff's wife honestly believed that plaintiff was unreasonable in his aforesaid demands and exactions. However, no direct expression from any of them to that effect, appears in the evidence.

While the disputes mentioned were going on, plaintiff almost daily engaged in broils with his wife, in which he reiterated his demand that she refrain from attending the mission, and that she deed the property to him. On one occasion, plaintiff physically assaulted his wife, and with such violence that the neighbors, to compose the trouble, called in the marshal and sheriff. On another occasion, plaintiff addressed defendant Holman in such a threatening manner, that bystanders seized him, and because of his violent struggles, threw him down on the pavement and held him until the city marshal arrived, when he was taken to jail.

For a year or more after plaintiff's wife discovered she had a cancer she did not attend as closely to her household duties, and was not as attentive to the care of the children as was her practice both before and after that time.

During the period last mentioned, plaintiff's wife occupied a separate bed from him, in order that she might obtain the rest that her physical condition demanded.

When plaintiff ceased attending the mission early in 1920, his wife refused to accede to his demand that she not attend the mission. Prior to that time she had always yielded to his objections, although she desired to go to the mission for religious worship.

Following the acts of violence committed by plaintiff on the defendants, the frequent disturbances of the peace by him and the assault upon his wife above referred to, the latter refused to kiss plaintiff, as had been her habit throughout their married life when he went away for the day and upon his return in the evening. On one occasion, when plaintiff had deeply offended her, she took off her wedding and engagement rings. The circumstances last referred to are relied upon by plaintiff to establish the alienation of his wife's affections and her neglect of her household and family duties.

In addition to the matters above related, the defendants Mrs. C. A. Rice and Mrs. Frank Splawn frequently on their way to the mission stopped across the street from plaintiff's residence, and waited for plaintiff's wife to accompany them, and sometimes one or the other of the said defendants would call to plaintiff's wife.

Concerning the defendant Frank Holman, plaintiff testified:

"A. He told me he was glad she had taken the stand against me and the children, and if she would listen to them she would be healed the same as he had been of consumption—he told me they called it consumption but he thought it was some kind of liver trouble. * * He got up in testimony and pointed over to her and said if she would listen to them she would be healed, if she would allow God to have a chance. * *

"Q. What else did he ever say?

"A. Well, that is the only thing. He told me to go ahead and sue them."

Plaintiff testified concerning Mrs. Frank Holman as follows:

"A. Well at the time she was up there and I said to her, 'Why do you want to break up my home?' and she said she would like to see me stop her. * * She told me one time—she talked to my wife in the alleyway— * * I asked her what she was doing, talking to my wife, and she said, 'Giving her advice,' and I said, 'I want all this talking between you and her stopped, what you are teaching her,' and she says, 'I told her it might be better if she didn't come quite so often.' * * Well, I called them back in their little room, or they called me in, and they told me then that if I would trust in God like Emma was and listen to them, if I would try to live like they were, that I might be saved, but she said, 'The way you are now, you would go to hell.' "

Of Mrs. Frank Splawn, plaintiff said:

"She come over to the house, after I was going to the mission, to call up her son in Falls City, and she says to me then, 'Aren't you glad now I advised Em. to go to the mission?' I said, 'I would have been gladder if they had a doctor.' That we would be better off, or words to that effect. I don't remember just exactly."

Plaintiff testified as to statements made by Mrs. Rice as follows:

"I said, 'I thought you told me you would not ask Em. to come up to the mission hall,—you better leave my family alone.' She says, 'I won't do it. I am going to get Em. to come to the mission all I please.' 'Why do you want to do that, when I don't want her to?' She said, 'It don't make any difference.' "

Concerning defendant Clem Swenson, plaintiff testified:

"A. He talked to her the same as all the rest. They talked to her all of them, at the same time. Clem Swenson—he told me he could have stopped the trouble if Mrs. Holman had allowed him, but she wouldn't. I believe Clem Swenson would have stopped it if they would let him, he told me at one time he would have stopped my wife if they would let him. * * Told her to come to the mission and not pay any attention to me. I objected to it then. * *

"Q. Did he ever say anything which you considered influenced her?

"A. Not any more than his teaching."

2. The legal aspect of the differences that existed between plaintiff and his wife respecting the desire of the latter to attend the mission of the Apostolic Faith is well stated in *Poor* v. *Poor,* 8 N. H. 307 (29 Am. Dec. 664), a case that arose at a time (1836) when the rights of married women were far more restricted than they are now.

Mr. Chief Justice RICHARDSON, speaking for the court, said:

"But a wife is neither the slave nor the servant of a husband. He is the head of the house, to whom as such she is subordinate. But she is at the same time his companion, the partner and sharer of his fortune, in many respects his equal; who in her appropriate sphere is entitled to share largely in his authority. And he is bound, not only to honor and support her, but to accord to her freely and liberally

all her rights, and to guaranty to her the full and free enjoyment of all her just privileges and prerogatives as the mistress of the family. In a particular manner he is bound to leave her free to enjoy her own religious opinions, and worship God according to the dictates of her own reason and conscience; and not to molest or restrain her in this respect, provided she does not in her zeal disturb the public peace, nor rebel against his lawful authority."

Under the circumstances shown by the evidence in the instant case, the objection interposed by plaintiff to the attendance by his wife at the mission were unreasonable. They were not only unreasonable, but plaintiff's manner of raising and attempting to enforce them was unbecoming and unmanly, and well calculated to create rebellion in the heart of the most dutiful wife.

3, 4. In the circumstances disclosed by the evidence, no legal duty rested upon the defendants to co-operate with plaintiff to prevent the wife of the latter from attending religious services at the mission. Rightfully they could not forbid plaintiff's wife from attending those services and participating therein. The defendants, or any of them, had a lawful right to invite plaintiff's wife to attend those services, and they also had a lawful right to take part in those services with her, there being nothing unlawful or immoral or improper in such services, or incidental thereto, as appears from the evidence in the instant case. In the absence of improper motives or unlawful intent on their part, the mere objection and disapproval of plaintiff based alone upon whim or prejudice did not take away or impair the rights of the defendants, in the respects mentioned. Of course, acts intentionally done with the purpose of alienating the affections of a wife, and which accomplish

such alienation, render those committing such acts liable in damages to the injured spouse, notwithstanding the acts complained of may have been committed in the guise of religious teachings.

5. In order to prove his case, it was incumbent upon plaintiff to produce some substantial evidence that the acts of the defendants of which he complained were committed maliciously or from improper motives implying malice in law, and with the design and intent to alienate the affections of plaintiff's wife from him, and that such acts' were the controlling cause which produced an estrangement between him and his wife: *Pugslay* v. *Smith*, 98 Or. 448, 459 (194 Pac. 686); *Roberts* v. *Cohen*, 104 Or. 177, 190 (206 Pac. 295).

6. A fair construction of the evidence adduced by the plaintiff upon the trial of the instant case discloses an entire lack of · any fact or circumstance from which malice upon the part of the defendants might be implied. No act committed by defendants, singly or in concert is shown, accompanied by an intention or design to alienate the affections of plaintiff's wife, and such cooling of the affections of the latter for her husband as is shown by the evidence, plainly appears to have been caused by plaintiff's misconduct. Manifestly, such conduct was the controlling cause of the conditions in his marital relations of which plaintiff complains. Consequently, the evidence was insufficient to support the verdict of the jury, and it was within the power of the court to set the same aside and also any judgment given thereon. That power might be exercised by the court upon its own motion: *DeVall* v. *DeVall*, 60 Or. 493 (118 Pac. 843, 120 Pac. 13, Ann. Cas. 1914A, 409, 40 L. R. A. (N. S.) 291; *Smith & Bros. Typewriter Co.* v. *McGeorge*, 72 Or. 523 (143 Pac. 905); *Fred-*

*erick & Nelson* v. *Bard,* 74 Or. 457, 461 (145 Pac. 669) (verdict set aside before judgment entered thereon); *Pullen* v. *Eugene,* 77 Or. 320 (146 Pac. 822, 147 Pac. 768, 1191, 151 Pac. 474, Ann. Cas. 1917D, 933); *Spokane County* v. *Pacific Bridge Co.,* 106 Or. 550, 553 (213 Pac. 151).

7. Counsel for plaintiff in the instant case contends that the power of the court upon setting aside a verdict is limited to granting a new trial, and that the court was without authority to enter judgment for defendants, as was done in the instant case.

In *Herndobler* v. *Rippen,* 75 Or. 22 (146 Pac. 140), it was held that, as a general rule, a trial court exceeds its power when, upon motion for new trial, it sets aside a verdict and enters final judgment without such trial, but that in cases like the instant case, where if the cause were to be sent back for a new trial, the result must necessarily be the same, and it appears that justice has been done, and that a new trial would result in the same judgment, the action of the lower court will not be reversed for entering a final judgment without a new trial.

The doctrine announced in the case last cited is peculiarly applicable to the instant case, and the rule therein announced should be enforced here.

It was recited in the order of the trial court setting aside the verdict that plaintiff's complaint was insufficient, and did not state a cause of action, but as the court was warranted in setting aside the verdict and entering judgment for the defendants, even though the complaint stated a cause of action, we find it unnecessary to determine whether the complaint was sufficient to support a judgment.

The judgment of the Circuit Court is affirmed.

                         Affirmed.   Costs Retaxed.

Bean, Rand and Coshow, JJ., concur.