Argued September 8; reversed October 10; rehearing denied
November 21, 1933

# COLUMBIA DIGGER SAND & GRAVEL CO. *v.*
# ROSS ISLAND SAND & GRAVEL CO.

(25 P. (2d) 911)

*I. N. Smith,* of Portland (Platt, Platt, Fales, Smith & Black, of Portland, on the brief), for appellant.

*Stephen W. Matthieu,* of Portland (John F. Logan, of Portland, on the brief), for respondent.

BEAN, J. The history of the controversy is about as follows: Prior to and in 1928, many different corporations, partnerships and individuals were engaged separately in the sand and gravel business in Portland, Oregon. Prior to the contracts several of these corporations united their interests in a general sales plan for the mutual benefit of each associate member, whereby the Central Sand & Gravel Company, called herein the Central Sand, was organized. The constituent members of this organization were Hackett Digger Company, Hawthorne Dock Company, Columbia Truck Company, Pacific Bridge Company, Nickum & Kelly, James A. C. Tait & Company, Star Sand Company, and the Ross Island Sand & Gravel Company, called Ross Island herein. Some independent operators did not join the Central Sand at the time of its organization. Plaintiff in this case, the Columbia Digger Sand & Gravel Company, called herein Columbia Digger, was in the sand and gravel business, but when it entered into the contract set forth as exhibit A it retired from such business for a certain time, as by the terms of that agreement. The contract between the Ross Island and the Central Sand, which was similar to the contracts of the other associate members, was attached to the complaint as exhibit B. These contracts were executed July 21, 1928. By the terms of the contract, exhibit B, Ross Island was to be awarded 21 per cent of the sand and gravel truck deliveries of the Central Sand, and, under the terms of exhibit A, the Columbia Digger, the plaintiff, was to have 50 per cent of the Ross Island's truck hauling of sand, gravel and fill material.

Plaintiff claims that the Ross Island, the defendant, failed to deliver to it the 50 per cent quota of the 21 per cent of the truck hauling which Ross Island was awarded under these contracts.

The complaint alleges the corporate character of plaintiff and defendant, the executions of exhibits A and B, and asserts that the contracts were breached by defendant's refusal to deliver the 10,853.06 yards of truck hauling as required in said written contract, to plaintiff's damage. The answer admits the formal allegation of incorporation, the execution of the contracts, and denies the other allegations of the complaint, including the breach of the contract, the failure of defendant to deliver the allotted yardage, as claimed by plaintiff, and the damage. The answer then affirmatively alleges that, by the contract upon which the complaint is based, the plaintiff agreed at all times during the life thereof to keep and have available and in good repair automobile trucks of proper size and sufficient number, properly and promptly to make all deliveries as called for by the defendant; that while the contract, exhibit A, was in force, the Central Sand sold to Readymix Concrete Company, another corporation, certain sand and gravel, and allotted to defendant the delivering thereof; that such sales to Readymix Concrete Company were delivered at the Ross Island bunkers without truck deliveries; that the defendant allotted to plaintiff and plaintiff did more than 50 per cent of all defendant's available truck hauling of sand, gravel and fill material during the life of the contract and was paid in full therefor. The answer also alleges that plaintiff wrongfully claims and bases his cause of action upon the theory that the truck hauling of mixed concrete made by Readymix Concrete Company

from the sand and gravel delivered to Readymix Concrete Company by defendant, which deliveries were made from plants of the Readymix Concrete Company to its own customers, should have been taken into consideration by defendant in arriving at the available truck hauling within said period and that during such period plaintiff was given opportunity to haul and there was offered to plaintiff for hauling 50 per cent of the available truck hauling of defendant, and also 50 per cent of the truck hauling of the Readymix Concrete Company for the same period. Defendant does not allege that 50 per cent of the Readymix Concrete Company truck hauling was offered to plaintiff by defendant, but that plaintiff failed and refused to do more than a small portion of the Readymix Concrete Company's hauling for such period and failed and refused to keep and have available and in good repair automobile trucks of proper size and of sufficient number, properly and promptly to do such truck hauling.

Plaintiff's reply alleges that exhibit A was entered into in furtherance of a general plan for the organization of Central Sand, as before stated; that Central Sand was the managing unit of the plan whereby its constituent members participated in a share of the sand and gravel business of Portland; that that contract was a part of the general plan, and one of the principal considerations from the plaintiff to defendant was the fact that plaintiff retired from the sand and gravel business for a period of not more than five years, or for such period as the Central Sand contract with defendant was in force; that when plaintiff and defendant executed exhibit A there were three methods of delivering sand, gravel and fill material, to wit: (1) by loading barges; (2) by loading on railroad cars;

(3) by truck delivery, of which plaintiff was to have 50 per cent; that both parties entered into the contract on the assumption that all sand and gravel would be delivered in one of three ways and thereby plaintiff would receive substantially the same profits which it theretofore had made before making said agreement. The reply then alleges that the order for sand and gravel from Readymix Concrete Company was secured for Central Sand by defendant and allotted to defendant by Central Sand at its option, instance and request; that said Readymix Concrete Company was organized soon after the execution of exhibit A and was owned by the managing officer or officers of Ross Island and was a subsidiary thereof; that the Readymix Concrete Company was not a consumer but a dealer, and that Readymix Concrete Company merely mixed sand and gravel with water and cement and thereafter delivered the same to the various retail customers throughout the city of Portland; that after Ross Island commenced making deliveries of sand and gravel to Readymix Concrete Company, plaintiff protested to defendant that such delivery, as well as the delivery of the Readymix Concrete Company product by Readymix Concrete Company to its own customers, was a breach of exhibit A; that the claim was made in good faith and plaintiff threatened defendant with legal proceedings by reason thereof and made claim that the action of defendant constituted a breach by defendant of exhibit A, so as to release plaintiff from any further compliance therewith; that in settlement of said claim and said threatened litigation and to induce plaintiff to continue with its agreement and to secure a waiver and relinquishment by plaintiff of its damage claim, defendant

"agreed that the sand, gravel and fill material delivered by it to the Readymix Concrete Company and in turn delivered by the Readymix Concrete Company, after being mixed with cement and water, was within the purview of the contract between plaintiff and defendant with respect to all sand, gravel and/or fill material contained in the product of the Readymix Concrete Company, and the defendant further agreed that it would as a part of its aforesaid contract with plaintiff and in compliance with the terms thereof secure for the plaintiff the hauling of sand, gravel and materials delivered by defendant to said Readymix Concrete Company, and that the defendant would pay plaintiff for the hauling of said sand, gravel and fill materials included in the products of the Readymix Concrete Company at the same rate provided for the hauling thereof in the aforementioned contract referred to as exhibit A, with an additional undertaking on the part of the defendant for the reimbursement of plaintiff for that portion of the Readymix product consisting of cement and water which the plaintiff was required to haul in addition to the sand, gravel and fill materials; and defendant further agreed in consideration thereof that it would secure for plaintiff the special trucks necessary to haul said products of the Readymix Concrete Company at a rental of $3 per hour, and that the sand, gravel and/or fill material contained in the product of the Readymix Concrete Company was to be considered as a part of the hauling of the plaintiff under said contract, exhibit A, and that subject to the provisions hereinbefore set forth said contract was to, and did remain in full force and effect until May 2, 1931".

The reply further alleges that plaintiff accepted the aforesaid modifications and supplement to the said contract as shown in exhibit A, and, apparently supplying an allegation which was omitted from the complaint in the reply, alleges that plaintiff was ready, willing and able to perform the conditions thereof and

to pay the truck rental and to supply any and all trucks to do the hauling specified; that payment for such hauling was made by defendant whether hauled alone or part of the Readymix products and the surplus of cement and water was paid for otherwise, through arrangements made by defendant; "that defendant failed and refused to keep its said contract, exhibit A, and failed and refused to secure a sufficient amount of the hauling of sand, gravel and fill material, or of the sand, gravel and fill materials contained in the products of the Readymix Concrete Company to bring its business up to the 50 per cent of the truck hauling to which plaintiff was entitled under said contract, known as exhibit A, as supplemented by defendant. That the profits which would have accrued to plaintiff for the hauling of sand, gravel or fill material, whether hauled alone or hauled as a part of the product of the Readymix Concrete Company was substantially the same under the arrangement as hereinbefore set forth".

The allegation in defendant's answer, that plaintiff agreed at all times during the life of the contract to keep and have available and in good repair automobile trucks of proper size and sufficient in number to properly and promptly make all deliveries as called for by defendant herein, is admitted by plaintiff in its reply, but it further alleges that the contract, exhibit A, was entered into in furtherance of the general plan of dividing the business between most of the larger producers, as detailed.

The reply admits the allegation of the answer to the effect that the Central Sand sold to Readymix Concrete Company sand and gravel and allotted to this defendant the delivery thereof and that the places to

which the sand and gravel thus sold were deliverable were located immediately adjoining the bunkers of this defendant and such deliveries were made by this defendant to said Readymix Concrete Company *without any truck hauling.* It, therefore, seems that the parties agreed that the sand and gravel which Ross Island delivered to the Readymix Concrete Company were delivered at the bunkers without any truck hauling. Therefore, as far as plaintiff's claim relates to Readymix, such claim relates to delivering of Readymix products by Readymix Concrete Company to its own customers. This is the crux of this case. Turning to the contract, exhibit A, wherein the plaintiff is designated as the "Trucker", and the defendant is designated as the "Gravel Co.", it is agreed that "the Trucker shall have and be given and allotted by the Gravel Co. fifty per cent (50%) of the Gravel Co.'s truck hauling of sand, gravel and fill material, under the aforesaid contract between the Gravel Co. and the said Central Sand & Gravel Co.". Therefore, it is plain that the defendant agreed to allot to the plaintiff a portion of the gravel company's truck hauling and that the contract did not embrace or refer to the hauling of any other company or concern.

The Readymix Concrete Company placed their bunkers close to the Ross Island bunkers. Defendant alleges in its answer that the places to "which the sand and gravel thus sold were deliverable were located immediately adjoining the bunkers of this defendant and such deliveries were made by this defendant to said Readymix Concrete Company without any truck hauling". Plaintiff admitted this in its reply. There is nothing in either of the contracts, exhibits A or B, to prevent Ross Island from delivering sand and gravel

from its bunkers to any one and receiving pay therefor, without having anything to do with hauling it away. It was only a certain per cent of the truck hauling of the Ross Island which defendant agreed to furnish plaintiff and not a certain per cent of the sand and gravel which it delivered or sold through the Central Sand.

This, it will be noticed, is sought to be remedied by plaintiff by alleging that there was a supplemental agreement or adjustment, as it is practically admitted that the defendant was awarded 56 per cent of all the other hauling of the gravel company. Not counting the Readymix product, it will be seen at once that the controversy pertains to the Readymix product, which was delivered by the defendant to the Readymix Concrete Company at its bunkers. After delivery it was the hauling of the Readymix Concrete Company and not the hauling of the Ross Island.

After the charge to the jury, counsel for plaintiff stated that "plaintiff's theory is that a new situation had arisen and that there was a readjustment. * * *" Plaintiff sought recovery upon the supplemental contract and not upon the original contract.

■ Defendant assigns error of the court in entering judgment against defendant because the plaintiff's complaint herein is insufficient for the reason that one seeking to recover on a contract by another's failure to perform must allege and prove that he himself has performed the contract. *Lewis v. Siegman,* 135 Or. 660, 664 (296 P. 51, 297 P. 1118). The case seems to have progressed beyond this point. The allegation is found in the reply which was suggested by the matter set forth in the answer, and we think, that being the case, the complaint was sufficient in that the defect or omission in the complaint was cured by the answer and

reply. *Turner v. Corbett,* 9 Or. 79; *Catlin v. Jones,* 48 Or. 158 (85 P. 515).

Defendant assigns that the court erred in receiving the verdict of the jury and entering judgment thereon because the jury did not follow the court's instructions. Plaintiff seeks recovery for loss of profits for defendant's failure to deliver it the full quota of 50 per cent of defendant's sand and gravel truck hauling under the written contract, and the defendant alleges and proves, outside of the Readymix product, that plaintiff was allotted more than 50 per cent of defendant's available truck hauling of sand and gravel and was fully paid therefor.

The court further charged the jury:

"That in and by the terms of the contract plaintiff herein agreed to at all times during the life thereof keep and have available and in good repair automobile trucks of proper size and sufficient in number to properly and promptly make all deliveries as called for by the defendant herein. Now that is a duty which rested upon the plaintiff, and the plaintiff alleges that it has fully performed all the duties by it to be performed, and if you should find that the plaintiff did not provide these sufficient trucks, as is alleged, then of course the plaintiff could not prevail and your verdict should be for the defendant."

Again, the court charged the jury as follows:

"Now we have here a grievance that was instituted by the Columbia Digger Sand and Gravel Company as plaintiff, and it asserts a grievance against another corporation known as the Ross Island Sand & Gravel Company. When we resort to the formal statement presented by the plaintiff we find that its grievance is based upon an alleged breach of a contract, a written contract. The plaintiff, the Columbia Digger Sand and Gravel Company, asserts and alleges here that on July 21st, 1928, it entered into a contract with the de-

fendant, the Ross Island Sand & Gravel Company, which contract is attached to its complaint, and it asserts that by virtue of that contract a certain duty arose on the part of the defendant Ross Island Sand & Gravel Company to it, the plaintiff, and that the defendant breached that duty. That is the core of the controversy.

"The contract between these corporations sets out the respective duties one to the other, and it is to this contract and to this contract alone that we resort to find out what the parties themselves have recognized as the duty of one to the other. * * *"

The court recited the allegations in regard to the modification of the contract, but the question as to whether the supplemental contract or adjustment was made by and between the plaintiff and defendant was not submitted to the jury or asserted by the court. The instructions are based wholly upon the written contract. The Readymix Concrete Company was organized and operated by Harold Blake. Mr. Blake also owned another corporation, known as the Pacific Building Materials Company, and the arrangement in regard to the defendant's hauling the Readymix product was made with Mr. Blake. The plaintiff asserts that Blake was acting for the Ross Island. If we were to pass upon the facts, we should be compelled to say that the testimony does not show that he was acting for the Ross Island, but was acting for the Readymix Concrete Company, and the testimony indicates that he was willing to have the plaintiff haul Readymix for the Readymix Concrete Company; that at first the trucks which were used were not suitable and the material would stick in the truck and caused great expense. Defendant hauled for about four months, and, on account of the deficient revenue, ceased to haul

for eleven months. After trying what is called a "bathtub" style of truck, which was not a success, Blake's company, the Pacific Building Materials Company, at an expense of about eight to ten thousand dollars, constructed a revolving type of truck so that the material—sand, gravel, cement and water—could be mixed as it was moved from the bunkers of the Readymix Concrete Company to the contractor. Plaintiff hauled Readymix with a truck of Blake's company, at a rental of $3 per hour. Mr. E. E. Crout, president of the plaintiff corporation, testified that he paid out more rent for trucks at $3 per hour than he received; that he did not have any equipment to deliver from the Ross Island; that he got it from Pacific Building Materials Company, one of Blake's companies. The defendant was not interested in the Readymix product. It had delivered its sand and gravel to the Readymix Concrete Company and its interest therein appears to have ceased, except for some slight testimony which is in the nature of a conclusion, to the effect that Blake was acting for the Ross Island. The testimony indicates that the officers of defendant were anxious to placate plaintiff and secure hauling for it from the Readymix Concrete Company in order to keep the Central Sand organization intact, but it does not indicate that the Readymix product was comprehended within the written contract. It came into the picture about a year after the contract was made.

■ The instructions given by the court to the jury to the effect that plaintiff could recover upon the written contract alone should have been followed by the jury, and a verdict contrary to such instructions is erroneous. It is settled law that the charge of the court to the jury, without objections or exceptions thereto,

whether right or wrong, becomes the law of the case. 20 R. C. L. 272, § 55; *Tou Velle v. Farm Bureau Co-op. Exchange,* 112 Or. 476 (229 P. 83, 229 P. 1103); *Western Mont. Nat. Bank v. Home Ins. Co.,* 75 Mont. 16 (241 P. 611); *Cooper v. Girdler,* 239 Ky. 565 (39 S. W. (2d) 1009); *Copeland v. Benson Hdwe. Co.,* 24 Ala. App. 127 (131 So. 1).

■ The testimony in the case did not sustain a verdict under the instructions of the court. *Bridenstine v. Gerlinger Motor Car Co.,* 86 Or. 411 (168 P. 73, 922); *Hughes v. Holman,* 110 Or. 415 (223 P. 730, 31 A. L. R. 1108).

■ Defendant predicates error upon the charge of the court leaving the question to the jury as to whether this Readymix was within the contract for the reason that it leaves the construction of the contract to the jury and not to the court. The construction of a written contract is for the court, and should not devolve upon the jury. § 9-214, Oregon Code 1930; *Henry v. Harker,* 61 Or. 276 (118 P. 205, 122 P. 298); *City of Seaside v. Randles,* 92 Or. 650 (180 P. 319); *Rose v. U. S. Lbr. & Box Co.,* 108 Or. 237 (215 P. 171); *Wallace v. American Life Ins. Co.,* 111 Or. 510 (225 P. 192, 227 P. 465).

■■ We think it would have been appropriate for the court to have instructed the jury that the hauling of Readymix was not embraced in or provided for in the written contract, and that in order for the jury to find that defendant breached its contract for hauling the Readymix product for the Readymix Concrete Company they must first find that the plaintiff and defendant entered into a contract for the hauling of Readymix by plaintiff for the Ross Island, or, in other words, the question of whether the written contract was subsequently modified or a supplemental contract

was entered into by the parties should have been presented to the jury. Plaintiff in its reply pleaded that there was a modification of the contract, exhibit A, and that plaintiff accepted the modification and supplement to said contract. Plaintiff now contends that the gist of its reply is that the parties had interpreted the contract in a certain way. With this contention we are unable to agree.

Plaintiff's secretary and treasurer, O. F. Borsian, testified as a witness on direct examination, as follows:

"Q. Just state what the controversy was that arose between plaintiff and defendant with reference to this Ready-Mix product and the delivery of it.

"A. Well, they were pioneers of Ready-Mix. We tried to haul the Ready-Mix in steel boxes and it would not come out; we had to take a pick and shovel and dig it out. Of course, we couldn't deliver it in our regular steel boxes so then Mr. Blake got a bathtub type. They were not much better, and later on he got the revolving type and I guess they are a success.

"Q. Well, now, did you have—what I am asking you, did you have any controversy with the Ross Island—when I say 'you' I mean the Columbia Digger Sand & Gravel Company—with reference to your right of hauling this sand and gravel that was in the Ready-Mix Concrete Company product?

"A. No, sir."

Plaintiff does not now claim that it was equipped with its own equipment to haul the Readymix product, although it claims that such product was within the terms of the original contract. Mr. E. E. Crout, plaintiff's president, as a witness, testified on cross-examination as follows:

"Q. Did you ever have any equipment of your own to deliver Readymix?

"A. No, sir.

"Q. You said at one time that the Ross Island Sand & Gravel Company furnished you equipment. Do you stand by that?

"A. Mr. Blake.

"Q. Will you stand by your statement?

"A. I don't think I made that statement.

"Q. Did you ever get any equipment to deliver from the Ross Island?

"A. No, sir.

"Q. Did they have any such agreement?

"A. Not to my knowledge.

"Q. From where did you get the equipment?

"A. From the Pacific Building Materials Company.

"Q. Mr. Blake's company?

"A. One of Mr. Blake's companies."

Blake's testimony of the circumstances in regard to the leasing of the trucks to haul Readymix is not attempted to be denied by Mr. Crout. Mr. Blake said he made the arrangements on behalf of his own companies, to wit: Readymix Concrete Company and Pacific Building Materials Company. Blake asserts he did not represent Ross Island and had no authority to do so in these transactions and every officer of Ross Island swears that the Ross Island made no agreement with plaintiff whatever relative to furnishing trucks under the alleged modification, as set forth in the reply. It appears without contradiction that Ross Island had no trucks for hauling sand and gravel or Readymix, and was in no way interested in hauling the Readymix product for the Readymix Concrete Company. The claim of plaintiff in regard to hauling Readymix for defendant seems to be a kind of synthetic hauling.

Not taking into consideration the Readymix product, it is admitted that the defendant awarded plaintiff 56 per cent of its truck hauling and paid therefor. No

controversy whatever seems to have arisen between plaintiff and defendant until the Readymix concrete came into existence. The Readymix Concrete Company was an independent company, organized by Mr. Blake, but the pleadings charge no fraud in the organization, and the court instructed the jury:

"The Readymix Company is an Oregon corporation. It is the same as if it were named John Jones. It is an entirely different entity. There may be personalities, there may be individuals in one company or in both companies, but in so far as we are trying this case the Readymix Company is an entirely different personality. It is known as the Readymix Concrete Company. Now the Ross Island Company says that the Central Company sold to this Readymix Concrete Company sand and gravel and allotted to the defendant the delivery, but such delivery by the Ross Island Sand & Gravel Company was made without truck delivery. That is its contention. That is the first thing that is set forth in the defendant's separate answer: That the Central Company sold to this third corporation known as the Readymix Concrete Company sand and gravel, and that the delivery of it was allotted to the defendant, but that such delivery was to be made without truck delivery."

The Readymix Concrete Company not being in existence when the contracts, exhibits A and B, were executed, it is quite plain that its business transactions were not within the contemplation of the parties to the two contracts. Under the court's instructions the jury was limited to the consideration of plaintiff's rights under the original contract, exhibit A. It is practically uncontradicted that defendant performed that contract, unless Readymix was embraced therein.

The record shows that the jury awarded damages to plaintiff for profits for the eleven months during

which time plaintiff did not haul or attempt to haul any Readymix. Mr. Crout estimates the profit on Readymix at 20 cents per cubic yard. The verdict awards a larger sum.

■ The admissions made by a party to a legal controversy stand upon a different footing from those made by an ordinary witness. The officers of the defendant corporation represent the corporation. The admissions by a party made intelligently are judicial admissions which are binding upon the court and the parties, and the jury and the court should take them as true. 22 C. J. 329, § 370; *Connor v. Lake Shore & M. S. Ry. Co.,* 168 Mich. 29 (133 N. W. 1003); *Cogan v. Cass Ave. & F. G. Ry. Co.,* 101 Mo. App. 179 (73 S. W. 738).

It follows that the judgment of the circuit court must be reversed. The cause will be remanded for such further proceedings as may be deemed appropriate, not inconsistent with this opinion.

RAND, C. J., CAMPBELL and BAILEY, JJ., concur.