Eberhard F. CIMIJOTTI, Plaintiff,

v.

Frances PAULSEN, Clarice Sprout, Lau-
retta M. Cimijotti, Defendants.

Civ. No. 912.

United States District Court
N. D. Iowa,
Central Division.

July 22, 1963.

son, character, business, property, or rights in property of another, or to do any illegal act injurious to the public trade, health, morals, or police, or to the administration of public justice, or to commit any felony, they are guilty of a conspiracy, and every such offender, and every person who is convicted of a conspiracy at common law, shall be imprisoned in the penitentiary not more than three years."

This ruling is being made upon a matter pertaining to discovery under Rule 26 of the Federal Rules of Civil Procedure, but the Court feels some preliminary statements about this cause must of necessity precede the ruling.

■ Section 719.1 is the Iowa criminal conspiracy statute, and it is settled law in Iowa that conspiracy alone is not actionable unless something is done which without the conspiracy would give rise to a cause of action. Bixby v. Wilson, 196 F.Supp. 889 (N.D.Iowa); Stambaugh v. Haffa, 217 Iowa 1161, 253 N.W. 137.

■■ There are no allegations that the defendants maliciously or with improper motive and intent did alienate the affections of Lauretta M. Cimijotti from the plaintiff. Hughes v. Holman, 110 Or. 415, 223 P. 730, 31 A.L.R. 1108. There may have been a sufficient defamation case alleged. In Paragraph VII of the Complaint, the plaintiff set out several statements which he claimed were made against the plaintiff, and together with other paragraphs of the Complaint, it is alleged that the statements were falsely and maliciously made. These statements allegedly were made by the defendants in attempting to aid Lauretta Cimijotti to get sanctions from the Catholic Church for a civil action against the plaintiff. In a defamation case, the plaintiff must prove his case in the statements alleged as no other statements may be used to prove defamation. Nelson v. Melvin et al., 236 Iowa 604, 19 N.W.2d 685. Defamation is not a favored cause of action and must always be specifically alleged.

---

Everett W. Gross, Helena, Mont., Carroll E. Cutting, Decorah, Iowa, for plaintiff.

C. Frederick Beck, Mason City, Iowa, for defendants.

HANSON, District Judge.

This is an action based upon alleged diversity in which the plaintiff claims civil liability because of certain acts committed by the defendants. These acts were allegedly committed maliciously, wrongfully and deliberately all in violation of Section 719.1 of the Iowa Code, I.C.A., which reads as follows:

"719.1 *"Conspiracy" defined—common law* If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to injure the per-

Paragraph X of the Complaint alleges that the defendants prevented the plaintiff from seeing Reverend Clarence S. Kruse. There are no allegations that the plaintiff had any right to see Reverend Kruse, nor any allegations that any wrongful means were used to prevent the plaintiff from seeing Reverend Kruse.

The plaintiff took the depositions of the defendants, Reverend Kruse, and Reverend Wheeler pursuant to Rule 26. The deposed refused to answer questions and based their refusal upon subsection (b) of Rule 26 and the First Amendment to the Constitution of the United States. These provisions read as follows, to-wit:

"Rule 26(b) *Scope of Examination.* Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

"Amendment One—Freedom of Religion, of Speech, and of the Press. Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The plaintiff in taking the depositions asked the witness about alleged statements made to Reverend Kruse and Reverend Wheeler by the defendants which statements allegedly contained the accusations against the plaintiff which are set out in Paragraph VII of the Complaint. Specifically, the questions which were not answered were: Who made the statements, what were the contents of the statements, who prepared the statements, and who signed the statements. The deposed did answer many of the questions in the depositions and in so doing gave the plaintiff the answers to some of these questions.

In the deposition of Reverend Kruse starting with line 2, page 4, and ending with line 12, page 5, the questions and answers reveal that all three of the defendants did see Reverend Kruse about the solicitation of sanctions by Lauretta M. Cimijotti and that the defendants' names were given to Reverend Kruse as witnesses in this matter. This same information was obtained from Lauretta Cimijotti starting on line 16, page 10, and ending on line 22 of page 22. On page 17, lines 8 through 17, Lauretta Cimijotti testified that no other persons made charges in this matter. On page 25 of her deposition, Lauretta Cimijotti testified that she did not know what defendant Clarice (Sprout) told Reverend Kruse. On page 31, lines 6 and 7, of her deposition, Clarice Sprout admitted signing a statement against the plaintiff.

On page 21 of the plaintiff's deposition, Mr. Gross admits that matters elsewhere available can not be inquired into in the matter of depositions and especially where it is already a matter of record in the court.

The Court feels that the question as to who made the statements has been answered. The question before this Court is whether the contents must be revealed.

There are a number of reasons why this Court will not compel answers which would reveal the content of these statements. These reasons will be taken up in order.

## PRIVILEGE

██ It is an unquestioned rule that privileged communications are not available on deposition. Rule 26(b); Mitchell

v. Roma, 3 Cir., 265 F.2d 633. The scope of the privilege is to be determined by state law. Merlin v. Aetna Life Insurance Co., D.C., 180 F.Supp. 90.

This issue concerns both the attorney-client privilege and the priest-penitent privilege. These are dealt with in Iowa by Section 622.10 of the Iowa Code, I.C.A. which reads as follows, to-wit:

"622.10 *Communications in professional confidence* No practicing attorney, counselor, physician, surgeon, or the stenographer or confidential clerk of any such person, who obtains such information by reason of his employment, minister of the gospel or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

The priest-penitent privilege will be considered first. There are a number of conditions which must be met before this privilege is allowed. Those conditions which are somewhat controverted in their application to the facts of this case are as follows, to-wit:

1. That the statements are made in the usual course of the discipline;

2. That the person claiming the privilege is allowed by the statute to claim it;

3. That the communication was secret; and,

4. That the statements be penitential in character and made by the penitent.

The Iowa court construed this statute in Reutkemeier v. Nolte, 179 Iowa 342, 161 N.W. 290, L.R.A.1917D, 273. In that case, the court applied the privilege to communications to any person whose duty and relationship to the chief recipient was such as to enable him to know the communications. In this case, the elders of the church were brought in according to the church discipline to hear the communication and the communication remained privileged. This case partly controls the present case in that certainly there can be no claim that the statements in question lost privileged character by being sent to the Chancery Office of Reverend Wheeler. In the Nolte case the privilege was extended farther than is necessary in the present case. This is only giving clergymen the same benefit as is given to attorneys and physicians whereby they may consult with other attorneys or physicians about a client's problem without destroying the client's privilege.

As to the communications made by Lauretta Cimijotti, there is no question that the remaining conditions of the privilege were met. She would clearly be the penitent. There is no claim nor evidence that her communications were not kept secret. The witness has claimed that the statements are penitential in character. There is no offer of proof indicating anything to the contrary.

In re Swenson, 183 Minn. 602, 237 N.W. 589 is a case similar to the present case. There the husband went to see his Lutheran pastor prior to a divorce action. The court regarded the communication privileged. This case is factually different from the present in that, in that case, the party not the penitent one later sought the divorce. However, the rule as to how the nature of the communication is proven should be applied the same in both cases. In the Swenson case, the lower court was reversed for holding the pastor in contempt.

It is probable that the real test is whether the statements were made in the course of the discipline and were necessary in order that the priest could fulfill his duty according to the discipline of the religion involved. However, in this case, it is not necessary to so extend the privilege.

As to the statements made by Clarice Sprout and Frances Paulsen, there is more doubt. These persons were

not the penitent person and the statements as to them may not have been penitential in character. It is clear from the depositions that the statements made by Clarice Sprout and Frances Paulsen were made to collaborate the statements made by Lauretta Cimijotti. It is also clear from the depositions that, according to the rules of the Catholic Church, this collaboration is necessary in a proceeding to obtain sanctions such as were solicited in this case.

In Wigmore on Evidence, Section 2396, it is recognized that in order for the penitent to receive absolution, it is sometimes necessary for others to have the communications made known to them. Wigmore suggests that whether in theory or in practice such is the case must be a question of fact as to the actual ecclesiastical rules, and that this should be left to rest upon the priest's discretion according to the needs of the case without destroying the privilege. It would seem that this case fits under this rule because Clarice Sprout and Frances Paulsen, as it appears from the depositions, did nothing more than collaborate the communications made to the priests by Lauretta Cimijotti.

The Iowa decision in Nolte is sufficient to indicate that this rule would be adopted in Iowa. In that case, the court said that the privilege applied to any person whose duty to the chief recipient allowed them to know of the communication. Lauretta Cimijotti's communication could not remain secret and privileged if those who collaborated it must state what it was that they collaborated. The court in the Swenson case, supra, stated that the communication must be penitential in character as to the person making the communication, but in that case this was dicta. Other cases such as the Nolte case and Mullen v. United States, 105 U.S. App.D.C. 25, 263 F.2d 275, have used broader language. The four conditions on· which the privilege rests were set out in that case:

"(1) The communications must originate in a *confidence* that they will not be disclosed;

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties;

"(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*; and

"(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation."

See also 58 American Jurisprudence, Section 532, which states: "And so it has been held that the communications protected are limited to such as are penitential in their character, or are made to clergymen in obedience to some supposed religious duty or obligation."

It seems clear also that in Boyles v. Cora, 232 Iowa 822, 6 N.W.2d 401, the court did not make penitential character a requirement of the privilege. (Observations were held privileged.) In In re Schaeffer's Estate, 52 Dauph. Co. 45, the opposite result was reached. This indicates a split of authority as to whether a penitential character is a necessary condition of the privilege.

The court in Mullen v. United States, · supra, made it clear that secrecy by the recipient is not a condition of the privilege. The court there felt that this privilege did exist under the common law, and that when reason and experience call for the recognition of the privilege, the dead hand of the common law will not restrain such recognition. The cases on this privilege are not unduly numerous. However, a number of cases say that a person should be able to seek religious or spiritual advice, aid or comfort and it should be privileged. See the cases cited in 97 C.J.S. Witnesses § 263. Also In re Swenson, supra.

██ A witness is not required to disclose the communication to enable the court to determine whether it is privileged, and before directing the witness to answer, the court should be satisfied, from the facts and circumstances leading

up to the communication, that the witness is mistaken in making the claim of privilege. In re Swenson, supra. Also the fact that the priests are sworn to secrecy has influenced the courts in determining that the communication is privileged. Mullen v. United States, supra. The priests would be subjected to infamy and disgrace if they disclosed communications which they have sworn to keep secret. See Wigmore on Evidence, section 2255, for a discussion of infamy and disgrace as a basis for the privilege.

### RELEVANCY

The second reason for not requiring the questions in issue to be answered is that Rule 26(b) requires the answers to be relevant to the proceedings. This rule does state that if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence, it is discoverable. This may be the basis of some of the statements by courts that the word "relevant" in Rule 26(b) should be given a liberal interpretation. In Cooper v. Stender, D.C., 30 F.R.D. 389, the court said:

> "It is our view that the phrase 'relevant to the subject matter' contemplates either evidence to be introduced at the trial or information that may lead to the discovery of evidence to be used at the trial."

In New Dyckman Theatre Corporation v. Radio-Keith-Orpheum Corporation, D. C., 20 F.R.D. 36, the court said:

> "A proper use of pre-trial procedure should make it possible to restrict and limit interrogatories and depositions to matters which are directly relevant to the amended complaint and the answers."

 The statements allegedly made against the plaintiff in this cause are at least qualifiedly privileged from slander. The Iowa court has recently explained its position on the qualified privilege. In Robinson v. Home Fire & Marine Ins. Co., 242 Iowa 1120, 49 N.W.2d 521 (1951), the court said:

> "Privileged defamatory matters are divided into two general classes: (1) those that are absolutely privileged and (2) those which are qualifiedly or conditionally privileged."

> "The court has the initial responsibility of determining whether the occasion upon which a party published a claimed defamatory matter was privileged. This responsibility on the part of the court exists regardless whether the issues involve the existence of an absolutely privileged occasion or one that is only conditionally privileged."

> "A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, * * *. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only * * *."

> "It has also been held that where a communication has been made in good faith by a person who deems it his duty to do so, whether legal or moral, it is qualifiedly privileged and is actionable only on proof of actual malice."

In the second Robinson case, 244 Iowa 1084, 59 N.W.2d 776, at p. 783, the court said:

> "Under some circumstances it has been held the defamatory language was sufficient to carry to the jury the issue of actual malice, as where it is out of all proportion to the occasion. 'But to be sufficient for such purpose it must of itself have a reasonable tendency to prove that the false accusation proceeds from the ill will or ulterior motive which is the

essence of malice, not merely that the person making it is angry because he believes it to be true.' "

"The use of strong or offensive language, in bad taste or want of sound judgment, if the speaker thinks the language is justified, is not evidence of malice."

See also Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222, 40 A.L.R.2d 933 (1954).

In Kinney v. Cady, 232 Iowa 403, 4 N.W.2d 225, the Iowa court said:

"The definition of a privileged communication is given in Fleagle v. Goddard, 188 Iowa, 1033, 177 N.W. 51, 52, quoting from Newell on Slander and Libel, 3d edition, section 492, as follows: 'A privileged communication is a communication which under ordinary circumstances would be defamatory, made to another in pursuance of a duty, political, judicial, social or personal, so that an action for libel or slander will not lie, though the statement be false, unless in the two last cases actual malice be proved in addition.' And quoting further (section 493): 'The occasion on which the communication was made rebuts the inference of malice prima facie arising from a statement prejudicial to the character of the plaintiff, and puts upon him the burden of proving that there was malice. In short, that the defendant was actuated by motives of personal spite or ill will, independent of the occasion on which the communication was made.' * * *

"The effect of words spoken may be a question of law where there is no dispute as to the circumstances when made. Nichols v. Eaton, 110 Iowa 509, 81 N.W. 792, 47 L.R.A. 483, 80 Am.St.Rep. 319."

The Iowa case on this doctrine which is closest to the facts of the present case is Lair v. Christian Restoration Ass'n, 8 Cir., 207 F.2d 378. This was a libel case based on statements in the Association's publication and certain circular letters and bulletins. The Court's action as to Count VII indicates that the Court felt that Iowa would consider this qualifiedly privileged.

"When a vote of excommunication from a church has been passed, and the offender thereby declared to be no longer a member, the sentence may nevertheless be promulgated, by being read in the presence of the congregation, by the pastor, and will not support the prosecution of an action for libel." 76 C.J.S. Religious Societies § 14b, p. 760; Farnsworth v. Storrs, 5 Cush. 412 (Mass.)

Also bona fide charges by a non-member of a church against another were privileged where the church was investigating charges against the person. Remington v. Congdon, 19 Mass. 310, 13 Am.Dec. 431. The only distinction in that case is that there the plaintiff had consented to the initial investigation. In a case where a clergyman gave a statement of the conduct of a person who was accused of a crime, the statement was privileged. Rude v. Nass, 79 Wis. 321, 48 N.W. 555.

In Van Vliet v. Vander Naald, 290 Mich. 365, 287 N.W. 564 (1939), the court held that where there was no showing of malice, a deposed minister could not recover for libel arising out of a publication of a resolution of an appellate tribunal of the church, in the official church paper, which stated that the deposed minister had been reinstated without sufficient evidence of penitence for his sin and that he had destroyed his usefulness as an active minister. This action had been brought to the appellate tribunal on a complaint pursuant to the church rules.

These cases do show that the rule the Iowa Court adopted in Kinney v. Cady, supra, applies to religious societies and that if a person with an interest in the matter makes a confidential communication to a church tribunal with a bona fide corresponding interest, this communication is at least qualifiedly

privileged. In the Remington v. Congdon case, supra, the person making the statement was a non-member of the church. In the present case, the church tribunal was allegedly investigating the conduct of Eberhard F. and Lauretta M. Cimijotti and, therefore, was interested.

When the qualified privilege is invoked, there must be a showing that the statements were made with malice in order for them to be actionable. It follows that the answers to the questions are not relevant to any cause of action unless malice is shown. As the statements themselves are qualifiedly privileged, there can be no action based on them unless malice is shown. In this case, there is a presumption of no malice because of the circumstances under which the alleged statements were made. Further, in this case, the circumstances tend to show that there was no malice and that the statements themselves would show no malice.

As stated in the second Robinson v. Home Fire & Marine Ins. Co. case at p. 783, of 59 N.W.2d for the words themselves to import malice they must be first shown to be false and then on their face they must show ill will or ulterior motive which is the essence of malice. The court said on p. 784 of that opinion that it has usually been held that privileged communications may not be shown to prove malice in the making of the privileged communication declared upon, at least until there is other testimony tending to prove such malice. See the cases cited on that page in support of this proposition. The court added that "In general, privileged communications are not admissible to prove malice, although there are decisions to the contrary." The court then points out that the minority rule is unsound in allowing the qualifiedly privileged evidence in before malice is shown. The Iowa Court then held that the qualifiedly privileged statements were not admissible to show the malice. See also 53 C.J.S. Libel and Slander § 214e, p. 323.

In Ryan v. Wilson, 231 Iowa 33, 300 N.W. 707, the court said:

"And the malice which the plaintiff must establish is not legal malice, or malice in law, the intentional doing of a wrongful act without just cause or excuse, as contended by the appellant. But it must be actual malice, malice in fact, express malice. We have so held many times."

This court concludes that all the statements being at least qualifiedly privileged, they would be inadmissible as irrelevant until malice is shown and, therefore, the court can not compel the answers in the depositions until a showing of relevancy is made to this court.

A number of the questions to which the plaintiff asks the court to compel answers relate to the attorney-client privilege. The first four questions in the deposition of Lauretta M. Cimijotti are of this character. Also the question on lines 7 and 8, page 16 of that deposition is of that character. These questions are privileged because they come squarely within the attorney-client privilege and because statements of witnesses to counsel in the preparation of a law suit are absolutely privileged and no action for libel and slander may be predicated on them. In the first Robinson case at p. 525 of 49 N.W.2d, the court held that a matter that is reasonably pertinent to the issues is absolutely privileged whether contained in pleadings, affidavits, *statements made by witnesses to counsel before trial*, or made in open court. The court there cited Harper on Torts, Section 248, and Prosser on Torts, pp. 824, 827. See also 97 C.J.S. Witnesses §§ 283, 284, and Restatement of Torts, Secs. 585, 586, 587, 588, 589.

The court also held the question of relevancy to be for the court and not the jury. In the Robinson case, the court sustained the motion to dismiss the action wherein such action was predicated upon certain alleged statements that an adjusting company had made to the plaintiff's counsel while the adjusting company was acting as an alleged agent

of the defendant. The court also said that this would not be publication in the required sense.

In Borg v. Boas, 9 Cir., 231 F.2d 788, this same theory was used. In that case, the action was against a newspaper for printing reports of complaints made against a Justice of the Peace in order that an action taken by the Justice of the Peace should be investigated by a grand jury. The truth of the complaint was a disputed fact, but the court held on several alternative grounds that the publication was privileged.

There are numerous other cases which have held that affidavits made preliminary to a judicial proceeding are privileged. In the present case, all the statements made to Mr. Beck, counsel for the defendants, were preliminary to the civil action against Eberhard F. Cimijotti.

Section 622.10 applies to the communication by Lauretta M. Cimijotti and there is no evidence or indication that the statements were made to obtain advice for the commission of a fraud. The allegation that a criminal conspiracy was committed is certainly not sufficient. There is no evidence of any substance to the allegation.

There are other reasons why the answers would not be compelled at this time. It is apparent from the depositions that the statute of limitations may have run on this cause of action, if a cause of action exists. Also, the diversity jurisdiction of this court has been disputed in the pleadings. The court would have no jurisdiction under Rule 26 to compel the answers to the disputed questions if there is no jurisdiction, and it should not be done if it is conclusive that the action is barred by the statute of limitations. This is especially true where the order compelling the answers would raise grave questions under the First Amendment to the Constitution of the United States.

It is, therefore, hereby ordered that the Motions to Compel Witnesses to Answer Questions are hereby overruled.