BAINES *v.* COOS BAY NAVIGATION CO.

[68 Pac. 397.]

PLEADING—INCONSISTENT DENIALS AND DEFENSES.

1. Under the established rule that where denials and affirmative defenses are inconsistent, the defenses are taken as true. An allegation in the answer, in an action against a corporation on a note alleged to have been executed by the corporation, that the note was executed and delivered as alleged in the complaint, in pursuance of a fraudulent conspiracy between plaintiff and an officer of the corporation, is an admission that the officer executing the note had authority to do so, and precludes the corporation from urging the defense of his want of authority, though it is also alleged in the answer : *Maxwell* v. *Bolles,* 28 Or. 1, followed.

SUFFICIENCY OF EVIDENCE—PROVINCE OF JURY.

2. The evidence for the plaintiff herein was sufficient to carry the case to the jury, as it fairly tended to support his claim.

CORPORATIONS—COMPENSATION OF OFFICERS.

3. Where the duties of an officer of a corporation are merely nominal, he is entitled to compensation for other services having no connection therewith, which he performs for the corporation : *Mitchell* v. *Holman,* 30 Or. 280, cited.

From Coos : JAMES W. HAMILTON, Judge.

Action by W. E. Baines against the Coos Bay, Roseburg & Eastern Railroad & Navigation Co., and another. From a judgment in favor of the defendants, the plaintiff appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Joseph W. Bennett* and *T. S. Minot.*

For respondent there was a brief over the names of *J. S. Coke Jr.,* and *S. H. Hazard,* with an oral argument by *Mr. Geo. H. Williams* and *Mr. J. Couch Flanders.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is an action on two promissory notes, for $4,000 each, dated April 18, 1894, alleged to have been made, executed, and delivered for a valuable consideration to the plaintiff by the defendant corporation. The complaint is in the usual form, setting out the notes *in haec verba,* from which it appears they were each signed, ''The Coos Bay, Roseburg & Eastern Railroad & Navigation Co., by R. A. Graham, General Manager.'' The answer denies, upon information and belief, the execution of the notes by the corporation, and sets up, among other defenses, the following: '' (1) That at the time the two promissory notes in complaint set forth were made, executed, and delivered, as in complaint alleged, the defendant corporation was not indebted to the plaintiff in any amount whatever, but that at said time the defendant R. A. Graham was indebted to the plaintiff in the amount stated in said two notes, and the said two notes in complaint mentioned were made, executed, and delivered in pursuance of a fraudulent conspiracy made and entered into by and between the plaintiff and the defendant R. A. Graham, in order that it might be made to appear that the amount of said two notes was a debt of the defendant corporation instead of a debt of the defendant R. A. Graham; that the plaintiff was duly elected, qualified, and acting director of the defendant corporation from the 19th day of August, 1890, the date when the defendant corporation was organized, until the 29th day of December, 1893, and well knew that the defendant corporation was not indebted to him in any amount whatever; and that the defendant R. A. Graham was indebted to him the amount of said two notes in complaint set forth, and in order to enable the defendant R. A. Graham to cheat and defraud the defendant corporation; (2) that from the 19th day of August, 1890, until about the 1st day of January, 1900, the defendant R. A. Graham was director and general manager of

the defendant corporation, and while so acting as director and general manager of the defendant corporation the defendant R. A. Graham paid to the plaintiff upon said two notes in complaint set forth the amount of money in complaint alleged to have been made, and paid upon said two notes other sums of money not mentioned in complaint, but how much this defendant corporation does not know and is unable to state, but whether or not said sums of money so paid by the defendant R. A. Graham upon said two notes were paid out of his own funds or paid with money belonging to this defendant corporation this defendant is unable to state; (3) the defendant corporation further alleges that, after the making of the two promissory notes in complaint set forth, the defendant R. A. Graham sold, assigned, and transferred to the plaintiff real and personal property as payments upon said two notes in complaint set forth, the description of which this defendant corporation does not know and is unable to give; but the defendant corporation states and alleges that the defendant R. A. Graham has fully paid, satisfied, and discharged the said two promissory notes in complaint set forth, by the payments in complaint alleged to have been made, and by other cash payments, and by real and personal property sold and transferred to plaintiff as aforesaid, and the said two notes have been fully paid, and there is nothing due the plaintiff thereon, and that this suit is instituted and prosecuted in aid of the fraudulent conspiracy above mentioned, made and entered into between the plaintiff and the defendant R. A. Graham, with the view to try and collect as much money as possible from this defendant upon said two notes for the benefit of the defendant R. A. Graham.'' A motion to strike out this separate defense, on the ground that it is inconsistent with the denials, together with a demurrer thereto, having been overruled, the plaintiff filed a reply denying the new matter in the answer, and upon the issues thus made a trial was had before a jury. At the close of the testimony, the jury, by the direction of the court, returned a verdict in favor of the defendants, and from the judgment rendered thereon the plaintiff appeals.

There were practically only two questions argued in this court: *first,* it was contended that Graham, as the general manager of the defendant corporation, had no power or authority to make or execute promissory notes in its name and on its behalf; and, *second,* that there was no consideration for the notes sued on, but they were made for Graham's individual indebtedness, and not that of the corporation.

1. The first question is concluded by the pleadings. The complaint alleges the execution of the notes by the defendant corporation. This averment is denied, but in its further and separate defense the defendant alleges affirmatively that the promissory notes in the complaint set forth were made, executed, and delivered as "in complaint alleged," and "in pursuance of a fraudulent conspiracy made and entered into" by and between plaintiff and Graham in order to make it appear that the notes were for the debt of the corporation instead of Graham. These allegations of the execution of the note by the corporation are inconsistent with the denial, and, under the law, must be taken as true. It has been held by this court that when a defendant denies the execution and delivery of a promissory note, and in a separate defense alleges that it was made with a fraudulent intent, its execution is admitted because the two statements are inconsistent, and, as between the denial of a fact alleged in the complaint and a direct admission of the same fact in the answer, the admission, and not the denial, will be taken as true: *Veasey* v. *Humphreys,* 27 Or. 515 (41 Pac. 8); *Maxwell* v. *Bolles,* 28 Or. 1 (41 Pac. 661). We are therefore not called upon to inquire at this time whether or not Graham had authority to execute promissory notes for and on behalf of the defendant corporation. The execution by it of the particular notes sued on is admitted by the pleadings, and such admission is binding on the defendant, and precludes the necessity of proof.

2. The remaining question is whether there was any evidence tending to show, or from which the jury could reasonably have found, that the notes were given for a valuable consideration moving from the plaintiff to the defendant company. The

defendant was organized in 1890, with a capital stock of
$2,000,000, all of which was subscribed by Graham, except
enough to render the requisite number of persons qualified to
serve as directors. At the first meeting of the board of di-
rectors in August, 1890, Graham was elected general man-
ager, and given "the general management of the business of
the company." At the same time the plaintiff was elected sec-
retary and treasurer, but no resolution was ever adopted de-
fining his duties. The testimony, however, is to the effect that
his ordinary duties were to keep a record of the proceedings of
the corporation and its directors, and to receive its funds. As
soon as the corporation was organized and its officers chosen,
it entered into a contract with Graham for the construction of
a railroad from Marshfield, in Coos County, to Roseburg, in
Douglas County, "to be standard gauge, and to be built in a
substantial and proper manner, so as to be successfully oper-
ated when built," in consideration of the assignment to him of
$225,000 in subsidy subscriptions and guaranties, and a prom-
ise to issue and deliver to him, as fast as definite sections of the
road should be located and built, its first mortgage bonds to the
amount of $25,000 per mile. In pursuance of this contract,
Graham constructed the road from Marshfield to Myrtle Point,
but his contract did not require him to secure the rights of way
depots, grounds, or terminal facilities. The plaintiff testifies
that, in addition to his duties as secretary and treasurer, which
were merely nominal, he acted for and represented the corpo-
ration in various other matters, and particularly in securing
rights of way, supervising the operation and location of the
road, and generally looking after its business, when Graham,
the general manager, was not present; that these various mat-
ters, together with a trip to New York and London, made at
the request and by the direction of the general manager of the
company, to assist in negotiating a sale of its bonds, occupied
his undivided time and attention from September or October,
1890, until the fall of 1893. About the 1st of April, 1894, he
filed a lien upon the roadbed, structures, and superstructures
of the corporation to secure the payment of $12,750, which he

claimed to be still due him for services so rendered to it. A few days later he visited Coos Bay for the purpose of instituting proceedings to foreclose his lien, and while there a compromise was effected between him and Graham as the general manager of the defendant, by which he accepted the two promissory notes set out in the complaint, and satisfied of record the lien previously filed. The testimony of the plaintiff, notwithstanding it is contradicted by other evidence, and that there are many circumstances indicating that the services rendered by him were for Graham, and not the defendant, was nevertheless sufficient to carry the case to the jury.

3. As a general rule, an officer of a corporation cannot recover for services performed in the discharge of his official duties unless in pursuance of a resolution or by-law of the corporation to that effect. Where, however, the services are clearly outside the scope of his duties as such officer, he is entitled to recover on a *quantum meruit*: *Wood* v. *Lost Lake Mfg. Co.* 23 Or. 20 (23 Pac. 848, 37 Am. St. Rep. 651, and note), and *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616). Now, there was evidence tending to show that plaintiff's official duties as secretary and treasurer of the defendant were nominal, and that the services alleged to have been rendered by him, and which he testifies were performed for the corporation and at the request of its officers, did not pertain thereto. If this is true,—and of that fact the jury are exclusively the judges,—he would be entitled to a compensation for the reasonable value of the services rendered by him, and such claim would be a sufficient consideration for the notes sued upon if the settlement between him and Graham was made in good faith. We are of the opinion, therefore, that, as the record stands, the judgment must be reversed, and the case remanded for such further proceedings as may be proper, not inconsistent with this opinion.

REVERSED.