Argued December 14, 1921, affirmed March 7, rehearing denied
April 11, 1922.

# DEAN v. COLE.

(204 Pac. 952.)

**Judgment—Foreclosure to Enforce Money Payment in Exchange
Does not Bar Action for Fraud.**

1. Under Section 756, Or. L., providing that in certain cases
judgment, in respect to the matter directly determined, conclusive
between the parties and their representatives, etc., the foreclosure of
a contract of exchange of property for failure to pay a balance
due thereon does not prevent bringing an action for fraudulent
representations in making the exchange.

**Fraud—Remedies Avialable.**

2. A party induced to enter a contract by fraud may either affirm
it and sue for damages, or rescind it and be reinstated in the
position in which he was before it was consummated.

**Contracts—To Rescind Because of Fraud, Party must Act Promptly.**

3. To rescind a contract on the ground of fraud, a party must act
promptly on discovery of it.

**Election of Remedies—Attempted Rescission of Party Who had Lost
Right to Rescind Does not Prevent Suit for Fraud.**

4. In an exchange of property where plaintiff had been in
possession over a year before offering to rescind, he had by delay
lost the right to rescind, and his attempt to rescind in a fore-
closure suit does not prevent him from suing for damages for
fraudulent representations.

**Fraud—Instruction Defining "Fiduciary Relation" Held Correct.**

5. In an action for fraudulent representations concerning an
exchange of property, where plaintiff was sick and unable to go
to see the property of defendant, whom he asked to describe the
property, an instruction that a "fiduciary relation" exists whenever
there exists a confidence enabling the person in whom it is
reposed to exert influence over the person trusting him when
parties to a transaction do not meet upon equality, one party
having a full knowledge and the other not, and the latter places
confidence in the former, was proper.

From Marion: PERCY R. KELLY, Judge.

---

4. Pursuit of mistaken remedy as election of remedies, see note
in 5 Ann. Cas. 962.

Department 1.     AFFIRMED.     REHEARING DENIED.

For appellant there was a brief and oral arguments by *Mr. Hall S. Lusk* and *Mr. Bartlett Cole.*

For respondent there was a brief over the names of *Messrs. Smith & Shields* and *Mr. James G. Heltzel,* with oral arguments by *Mr. Roy Shields* and *Mr. Heltzel.*

BURNETT, C. J.—1. Prior to the controversy between the parties, embodied in this litigation, Dean owned a city lot in Portland and Cole owned acreage in Marion County. They exchanged these pieces of realty by Dean's conveying the lot, rating the value at $8,000, which was credited on the purchase price of the acreage, fixed at $11,500. Instead of Cole's conveying the acreage to Dean, they entered into a contract whereby Cole agreed to convey and Dean covenanted to buy the acreage, the deed to be made upon the payment by Dean of the balance of the purchase price, $3,500, to be applied in liquidation of a mortgage on the land. Dean went into possession of the acreage.

He claims that he was induced to make the exchange by fraudulent representations of Cole, concerning the condition of the orchards on the land, the boundaries thereof and the condition of the soil. The contract was made November 28, 1917. Claiming to have discovered the truth respecting the land, its boundaries and the condition of the orchards, and the falsity of Cole's representations concerning those matters, Dean on December 21, 1918, served on Cole a notice to the effect that on account of the fraud practiced upon him by Cole the former relinquished

to the latter the full control and possession of the acreage, tendering therewith a quitclaim deed for the same, offering to account for the rents and profits received by him during his possession, demanding payment to him of what he had paid on the contract, to wit, $8,000, or in lieu thereof a reconveyance of the Portland lot, and rescinding the contract for the purchase of the acreage. Cole, however, refused to accept the deed or to assent to a rescission of the contract.

Dean then on December 23, 1918, began an action against Cole to recover $8,000 as for money had and received. The service of summons in that action was quashed and nothing further seems to have been done with the matter in that form.

On January 30, 1919, Cole began suit in Marion County to foreclose the contract for the sale by him and purchase by Dean of the acreage. In the complaint in that suit it was averred in substance that Cole was the owner of the Marion County land; that the parties made the contract for the sale thereof by Cole to Dean; that the latter took possession of the acreage; that Cole has fully performed his part of the contract; and that Dean has not paid the balance of the purchase price or otherwise performed his agreement, but has notified Cole that he would not perform the same.

The answer of Dean to that foreclosure suit, upon which it was tried, admits Cole's ownership of the acreage and the making of the contract, but otherwise denies the complaint except as stated further in the answer. It then avers that Dean offered to restore the land to Cole, in pursuance of which he tendered a quitclaim deed on December 21, 1918, and he brings the same into court for delivery to Cole.

A second and further separate answer, reciting the history of the transaction and declaring that Dean was induced to make the contract by the fraud and false representations of Cole as to the boundaries of the land and the condition of the orchard and soil, avers that on discovery of Cole's fraud Dean elected to and did rescind the contract, but Cole refused to consider the same. This second and further separate answer, however, was dismissed on motion of Dean at the hearing April 14, 1919, without prejudice. The reply denied the first separate answer *in toto*. The second answer was challenged in material particulars, but as it was dismissed and withdrawn from the case without prejudice, it is not necessary further to consider the pleadings in the foreclosure suit. The findings of the court in that suit are in substance that Cole owned the Marion County land; that the parties made the contract on November 28, 1917; that Dean took possession of the acreage and remained there until December 21, 1918; that Cole has performed his part of the agreement; that Dean has failed and refused to pay the taxes on the land or the balance of the purchase price; that Cole had warned Dean that he would foreclose the contract unless the balance was paid; that Dean thereupon notified Cole that he would not comply with the contract; and finally that on December 21, 1918, Dean had served on Cole a notice of rescission and tender of return of the Marion County lands, all of which Cole refused. Thereupon an interlocutory decree was entered allowing Dean a certain time in which to pay the balance, and afterwards when it was made to appear to the court that Dean had not paid, a final decree was entered foreclosing him from any claim whatever upon the

acreage. No money judgment or decree was demanded by either party in the foreclosure suit.

After the decree was rendered in that suit, this action was commenced by Dean against Cole, the amended complaint therein being filed June 30, 1919. In substance Dean alleges Cole's ownership of the lot, a statement that its net value is $8,000, the making of the contract, the fraud of Cole inducing the same, Cole's knowledge of the falsity of his statements, and Dean's reliance thereupon. Averring that the difference between the value of the Portland property and that of the acreage was $8,000, Dean claims to have been damaged in the latter sum, for which he demands judgment. Cole admits the making of the contract and his ownership of the land, but traverses all the allegations of fraud. Affirmatively he states the making of the contract, that Dean went into possession of the land after having made a thorough examination of the same, and that Cole made no representations concerning any of the matters alleged in the amended complaint of which Dean complains. He then gives a history of the foreclosure suit, setting out as exhibits all of the pleadings, findings and conclusions of the court and the interlocutory and final decrees, together with the order dismissing the second and further separate answer of Dean without prejudice. Cole claims in his answer that this disposition of the foreclosure suit bars the prosecution of the present action for damages. Still further, Cole recites the giving of the notice of rescission and the action commenced by Dean on December 23, 1918, in which the service of summons was quashed. Cole's contention under this third affirmative answer is that by virtue of having given the notice and having filed the counterclaim in the foreclosure suit, which was after-

wards withdrawn, and by bringing the action as for money had and received, in which the service of summons was quashed, Dean has irrevocably and conclusively elected to rescind the contract, and that the same constitutes a waiver of the alternative right to bring an action for damages.

We will first consider the effect of the decree of foreclosure. That is established by Section 645, Or. L. After first giving the effect of a judgment, decree or order against a specific thing, or as to the probate of a will, or the personal, political or legal condition of a particular individual, the statute says:

"In other cases, the judgment, decree, or order is, in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action, suit, or proceeding, litigating for the same thing, under the same title, and in the same capacity."

As the pleadings were amended by the withdrawal of the counterclaim in which alone was said anything about fraud or rescission of the contract, the matter of damages or of fraud upon which the same was based was not litigated. All that was "directly determined" in that suit was embodied in the findings, in substance that Cole is the owner of the land; that the contract had been made; that Cole had performed it and that Dean had not performed it; with the resultant embodied in the decree that Dean was ousted of all right to the land. Nothing further was "directly determined." The matter of damages was not involved.

2. The remaining question is: What effect must be given to the notice of rescission served upon Cole December 21, 1918, which he refused to consider? It is true, as laid down in the leading case of *Scott* v.

*Walton,* 32 Or. 460 (52 Pac. 180), and as contended by the defendant here, that a party who has been induced to enter into a contract by fraud has upon its discovery an election of remedies. He may either affirm the contract and sue for damages, or rescind it and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent but wholly inconsistent. The adoption of one operates as an abandonment of the other. If Cole had accepted the offer of Dean to rescind the contract on the terms specified in the notice, the remedy would have been worked out by the action of the parties and would then have remained as a conclusive bar to the employment of any other remedy. Cole, however, did not accept the proffered rescission on the terms appendant. On the contrary, he refused the offer. It is plain, then, that the controversy was not determined by the acts of the parties. It remains to ascertain what effect must be given to the notice of rescission served, as stated, on December 21, 1918. It is said:

"An election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made. Hence the fact that a party misconceives his right, or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based upon a remedial right which he erroneously supposes he has, and is defeated because of such error, does not constitute a conclusive election, and does not preclude him from thereafter prosecuting an action based upon an inconsistent remedial right. A party does not have two remedies between which he must elect, where there is a valid defense to one of them, as where the remedy first sought is defeated by laches or the statute of limitations, although there are decisions inconsistent with this rule." 20 C. J. 21.

3. It is primary learning that if a party would rescind a contract on the ground of fraud, he must act promptly upon discovery of the fraud. Examining in this connection this notice of December 21, 1918, we find, referring to the contract and transactions between the parties, the statement of Dean "that the same were induced and procured through fraud, as I have heretofore notified you," clearly indicating that before the service of the notice Dean had knowledge of the fraud. This is enforced by the fact that Dean went into possession of the acreage at the time the contract was made on November 28, 1917, and at the time the service of notice of rescission was made, had been in possession more than a year, with every opportunity to discover the falsity of Cole's representations respecting the condition of the orchard, as well as the fertility and boundaries of the land. Under these circumstances appearing on the face of the record, Dean had lost his alternative right to rescind the contract, and he did not in fact at that time have two remedies between which he was required to elect.

4. His attempt at election, where there was no ground for the same, is utterly null and of no binding force or effect upon him. His only remaining remedy was that of an action for damages, a legal remedy which could not be enforced as a counterclaim in a suit in equity. The present contention is somewhat analogous to that portrayed by Mr. Justice HARRIS in *Oregon Mill & Grain Co.* v. *Hyde*, 87 Or. 163 (169 Pac. 791), but with this difference: There, the parties seeking relief pursued at least two fancied but none the less mistaken remedies, even to final judgment, before attempting the right one, which was ultimately sustained; while here all assertion of fraud and deceit uttered prior to the present complaint has been elimi-

103 Or.—37

nated from the record without prejudice, so that it does not affect the case, but leaves it as if the plaintiff had hit upon the right remedy in the first instance. Moreover, as we have seen, the assertion of the right to rescind on the ground of fraud came too late, because of the confessed delay on the part of Dean in making the charge.

The result is, that, not having directly determined the question of fraud or damages, the decree of foreclosure does not affect Dean's right to recover damages. Again, on account of Cole's refusal of the offer to rescind there is no agreement settling the controversy. Finally, inasmuch as Dean's notice of rescission came too late and the remedy depending upon rescission perished, there is no election of remedies standing in the way of his right to sue for damages. Cole has not been induced to change his position by virtue of anything Dean did in the way of giving him notice of rescission, which was not accepted. The situation, therefore, is reduced to one in which, if the complaint is to be believed, Cole has the land he owned at all times during this litigation, and in addition thereto has acquired Dean's Portland lot. Dean says this result was achieved on account of Cole's fraud. If this be true, Dean has suffered some damage. This has not been adjudicated in any other litigation, so far as the record discloses. The questions of fraud and the amount of damages have been submitted to the decision of a jury in this case. Based upon the verdict and ensuing judgment, is fashioned the first adjudication of these matters in all the transactions of the parties of which we have history in the pleadings.

5. The trial judge instructed the jury that:

"A fiduciary relation exists wherever there exists such a confidence, of whatever character that confidence may be as enables the person in whom the confidence or trust is reposed to exert influence over the person trusting him; that is to say, whenever two persons stand in such a relation that while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of the confidence is possessed by the other.

"Fiduciary relations exist when parties to a transaction do not meet upon equality, one party having a full knowledge and the other not, and the latter places confidence in the former."

This instruction evidently was intended to refer to the averment of the complaint to the effect that Cole had superior information about the land and the condition of the orchard, while Dean had no previous knowledge on those subjects; that owing to his illness he had but limited opportunity to examine the same; and that he asked Cole truly to relate the conditions to him. As laid down in substance in *Boelk* v. *Nolan,* 56 Or. 229 (107 Pac. 689), where one, having accurate information concerning property about which negotiations are being carried on between himself and another not thus informed, undertakes, at all, to make statements respecting the property, he must speak the whole truth. The reason of the rule is that since the speaker has full knowledge and has induced the other party to rely upon him, it would be approving a violation of confidence to allow him to profit by the utterance of a half truth. The instructions aptly described such an instance as stated in the complaint and further gave the jury directions how to proceed in the absence of such conditions.

There are other assignments of error, but not of sufficient importance to merit discussion. In our

opinion, the judgment of the Circuit Court was right and must be affirmed.

AFFIRMED. REHEARING DENIED.

BEAN, HARRIS and RAND, JJ., concur.