Argued May 2, affirmed May 25, 1960

# HEISE ET UX *v*. PILOT ROCK LUMBER CO.

### 352 P. 2d 1072

80

*Edward J. Clark* argued the cause for appellant. On the briefs were Peterson, Clark, Clark & Peterson, appellant.

*Thomas H. Tongue,* Portland, argued the cause for respondents. With him on the brief was Roy Kilpatrick, Canyon City.

Before McALLISTER, Chief Justice and WARNER, SLOAN, O'CONNELL, GOODWIN and MILLARD, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal by defendant from a judgment in favor of plaintiffs for $3,122 and costs and disbursements, based upon a jury verdict entered in the circuit court of Grant county in an action based upon alleged fraudulent misrepresentation and concealment by the defendant as to the quantity of timber sold by plaintiffs to defendant. In addition defendant appeals from the orders of the trial court denying defendant's motions for judgment n.o.v. and for a new trial.

In its first assignment of error defendant claims the court erred in not sustaining its demurrer to plaintiffs' second amended complaint based principally upon failure to state a cause of action or suit and upon the further ground that the claimed cause of action was barred by ORS 12.110, which is the two-year statute of limitations applying upon the discovery of fraud or deceit. Omitting the allegations as to the marital relationship of the plaintiffs and the corporate existence of defendant, said complaint, apart from the prayer and exhibits, alleges as follows:

"III

"That in 1947, plaintiffs were the owners of the following described real property situated in Grant County, Oregon to-wit:

"SE¼ NW¼, E½ SW¼ Sec. 8; SW¼ SW¼ Sec. 9; NE¼, E½, NW¼, NE¼ SW¼, NW¼ SE¼ Sec. 17 Twp. 7S., R. 30 E., W. M.

"That in 1947 plaintiffs approached defendant and asked defendant to buy the timber upon said premises and defendant agreed to purchase all of the then merchantable timber upon said premises and agreed to pay therefore [sic] $4 per thousand feet board measure log scale for all of the merchantable Ponderosa Pine timber standing, lying or being upon said premises and defendant also agreed to cruise said timber for the purpose of fixing the price to be paid to plaintiffs and that said price would then be computed at the rate of $4 per thousand board feet as determined by said cruise.

"IV

"That defendant did cruise said timber in 1947 and determined that there was then upon said land in excess of 2,300,000 feet board measure log scale of merchantable Ponderosa Pine timber. That defendant thereupon willfully, falsely and fraudulently represented to the plaintiffs in 1947 that its cruise disclosed that there was 1,537,500 feet of merchantable Ponderosa Pine timber and that at the rate of $4 per thousand board feet said timber would come to $6,150.00 (and concealed the true results of its cruise as aforesaid).

"V

"That defendant made the aforesaid representation with full knowledge of the falsity of said representation and that plaintiffs would rely thereon to their damage, as hereinafter alleged, and with the intention to mislead plaintiffs and that plaintiffs would rely thereon.

## "VI

"That plaintiffs at said time did not know how much timber there was upon said land and were not able to estimate the quantity of said timber by reason of their lack of experience, education and training and relied entirely upon defendant's representation. That plaintiffs relied upon said misrepresentations and believed the same to be true and in reliance thereon, and not otherwise, plaintiffs were induced by defendant to execute a contract, a copy of which is attached hereto and marked Exhibit 'A' and made a part hereof the same as if set out haec verba, and a deed, a copy of which is attached hereto and marked Exhibit B and made a part hereof the same as if set out herein haec verba, selling to defendant all of the then merchantable timber upon said land, receiving therefor $6,150.00, in cash and granting unto the defendant the right to remove said timber for twenty years.

## "VII

"That neither party did anything in respect to said timber until the latter part of April, 1958 when defendant began to log the timber upon said land.

"(That from the time the original sale contract was executed in 1947 until after cutting operations began in 1958 on the timber, relied upon defendant's representation as to the quantity of the timber, based upon a cruise made by defendant; that plaintiffs' home is situated several miles from the timber land and plaintiffs used said timber land during said period solely for summer grazing and paid no attention to the timber; that during said period no facts were brought to plaintiffs' attention that gave them any reason to doubt defendant's representations as to the quantity of said timber or would have given any prudent person any such reason; that during said period plaintiffs acquired no more knowledge of timber or no more

skill or ability to estimate the quantity of standing timber than they had when the original contract was made; that at all times until after the cutting operations had begun and plaintiffs discovered the fraud that had been perpetrated upon them they continued to rely upon defendant and defendant's agents and any prudent person would have so relied, and that during said period preceding the cutting neither defendant nor its agents or employees did anything that caused plaintiffs to suspect them or to doubt their word or would have caused any prudent person to do so.)

## "VIII

"That as defendant logged this land in 1958 plaintiffs from time to time observed defendant's operations, visited with employees of the defendant and observed the logs that were hauled from the property. That as a result of said observation plaintiffs discovered for the first time that more timber was located on said lands and was being removed from the premises than the defendant had represented to be there and thereupon instituted this action and by means of discovery proceedings herein learned the exact amount of timber removed by the defendants from said premises in 1958 and by hiring a cruiser determined the exact amount of timber left standing upon said premises.

## "IX

"[This section was deleted as part of amendments.]

## "X

"That as a result of defendant's false and fraudulent misrepresentations and plaintiffs' reliance thereon, as aforesaid, defendant purchased 780,500 feet more Ponderosa Pine timber from plaintiffs' land than plaintiffs intended to sell or believed that they were selling to defendant to plaintiffs' loss and damage in the sum of $3,122.00."

In addition, attached to this complaint as a part thereof is exhibit A which purports to be a timber contract executed by the parties and dated October 11, 1947, and which, omitting the preamble and provisions for warranties, title insurance, and the like, in effect provided that for "all timber now standing, growing or being on" the premises described in the complaint was sold to defendant for "$6,150.00, one-half thereof or the sum of $3,075.00 has been paid this date; and further provided for payment of the balance upon a deed showing good unencumbered title. Also attached to the complaint as a part thereof was exhibit B, which is a deed executed April 6, 1948, conveying plaintiffs' timber to defendant and containing other provisions not necessary to a decision in this case.

██ It should be noted that defendant, as additional grounds of demurrer, once contended that there was a misjoinder of causes, claiming plaintiffs had attempted to combine an action of fraud with an action based upon implied contract, and further that the six-year statute of limitations relating to actions on contract applied. We understand these grounds have now been abandoned. In any event, they are clearly not tenable.

Does the complaint state a cause of suit or action? Since the complaint seeks damages as total relief, it is evident that no appeal was made to the equitable jurisdiction of the court, the remedy at law being adequate; hence the complaint is insufficient as a suit in equity. In *Musgrave et ux. v. Lucas et ux.*, 193 Or 401, 410, 238 P2d 780, the necessary elements of an action at law for fraud are clearly set forth. They are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should

be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury." See also *Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or 332, 350, 225 P2d 757. Further in *Musgrave et ux. v. Lucas et ux.*, supra, recognizing that when there is a duty to speak, fraudulent concealment is in fact a form of fraudulent misrepresentation, it is stated:

> "Actionable fraud may be committed by a concealment of material facts as well as by affirmative and positive misrepresentations. In 37 CJS, Fraud, 244, § 16 A., it is said:
>
>> " 'An exception to the rule that mere silence is not fraud exists where the circumstances impose on a person a duty to speak and he deliberately remains silent. It is well settled that the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation. Where the law imposes a duty on one party to disclose all material facts known to him and not known to the other, silence or concealment in violation of this duty with intent to deceive will amount to fraud as being a deliberate suppression of the truth and equivalent to the assertion of a falsehood.'
>
> See also Palmiter v. Hackett, 95 Or 12, 17, 185 P 1105, 186 P 581." Supra, at p 410.

■ From reading the complaint it is apparent that all the necessary elements are present. Nevertheless, defendant contends that plaintiffs are not entitled to recover on the theory that plaintiffs have not alleged too little but too much when they alleged the execution of the written agreement and deed. Defendant con-

tends that by reason of this plaintiffs in effect have shown that they are not entitled to prevail. This is on the theory that plaintiffs are attempting to vary the terms of a written instrument by parol evidence. Defendant says this is necessarily so because the agreement and deed show a sale for a lump sum rather than at $4 per M and that plaintiffs are attempting, therefore, to prove a promise to sell for a sum or sums other than that contained in the written agreement and to ingraft a parol consideration into the contract which, in effect, varies or contradicts such written instrument. This the defendant asserts may not be done, citing as authority therefor *Baines v. Coos Bay Nav. Co.,* 41 Or 135, 138, 68 P 397; *Brown v. Feldwert,* 46 Or 363, 365, 367, 80 P 414; *Interior Warehouse Co. v. Dunn,* 80 Or 528, 535, 157 P 806; *Marks v. Twohy Bros. Co.,* 98 Or 514, 523, 194 P 675; *Hoff v. Peninsula Drainage Dist.,* 172 Or 630, 637, 638, 143 P2d 471; *Weatherford v. Weatherford,* 199 Or 290, 295, 296, 257 P2d 263, 260 P2d 1097. Some of these authorities are to the effect that while recital in a written instrument as to payment of consideration is merely in the nature of a receipt and thus may be contradicted or explained by parol evidence, but that the rule is otherwise when such evidence would contradict or render nugatory some substantial contractual provision or ingraft an additional executory or contractual consideration. The remainder simply hold that one who pleads or admits a written contract cannot deny such contract when fraud in the execution is asserted. Defendant has cited many authorities claiming that fraud may not be charged when negated by a written contract between the parties. All of them may be well summarized by referring to *Colt Co. v. Thompson,* 114 Okla 61, 242 P 1030, 1031,

cited by defendant and wherein the following principles are announced:

"The execution of a contract in writing supercedes all the oral negotiations or stipulations concerning its terms and subject-matter which preceded or accompanied the execution of the instrument, *in the absence of accident, fraud or mistake of fact*; and any representations made prior to or contemporaneous with the execution of the written contract, are inadmissible to contradict, change or add to the terms plaintiff incorporated into and made a part of the written contract." (Emphasis supplied.)

See also 37 CJS 268, Fraud § 27b; 32 CJS 952, Evidence § 979, note 47.

■ None of these cases has to do with allegations of fraud in the inducement which do not necessarily contradict or vary the recital of considerations in the written instrument. In this case plaintiffs by their pleading in effect admit a sale of their timber for $6,150 but complain because of defendant's alleged fraudulent misrepresentations and concealment of the true facts relating to the amount of timber. Neither the contract nor deed states the amount of timber to be sold. Further, plaintiffs are not here attempting to enforce a parol provision but, on the contrary, base their case on an alleged misrepresentation of fact which induced or procured the contract.

■ In any event, the existence of a written contract or deed which does not by its very terms negate the alleged fraud is no defense in actions for damages for fraud for the reason that fraud is an exception to the parol evidence rule. In such cases the party may elect to affirm the transaction and sue at law for damages resulting from the fraud. *Carty v. McMenamin &*

*Ward,* 108 Or 489, 495-496, 216 P 228; *Billups et al. v. Colmer,* 118 Or 192, 200, 203, 244 P 1093; *Outcault Advertising Co. v. Jones,* 119 Or 214, 223, 234 P 269, 239 P 1113; *Fleishhacker v. Portland News Pub. Co.,* 158 Or 476, 554, 556, 77 P2d 141; 24 Am Jur 102, Fraud and Deceit § 267; 56 ALR 100-101 (Annotation). It should be further noted that express exculpatory statements with reference to fraud contained in a contract or agreement do not of themselves constitute a defense. 23 Am Jur 778, Fraud and Deceit § 26. The cases of *Looney v. Rankin,* 15 Or 617, 622-626; *Sund & Co. v. Flagg & Standifer Co.,* 86 Or 289, 298-302, 168 P 300; *Ramirez v. Ringo,* 202 Or 1, 3, 271 P2d 657, cited by defendant, do not deal with the question of fraud.

 Further, misrepresentations as to the quantity of real property including timber furnishes a proper basis for recovery of damages for fraud even though the sale was in gross for a lump sum. *Cawston v. Sturgis,* 29 Or 331, 335, 43 P 656; *Purdy v. Underwood,* 87 Or 56, 59, 63, 169 P 536; *Lichtenthaler v. Clow,* 109 Or 381, 385-388, 220 P 567; *Hunt v. Ring et al.,* 125 Or 111, 116-117, 265 P 1094; *Shafer et ux. v. Ekstrand et ux.,* 140 Or 582, 589, 14 P2d 287; *Selman v. Shirley,* 161 Or 582, 591-592, 85 P2d 384, 91 P2d 312 (Timber); 23 Am Jur 823, Fraud and Deceit § 53; 54 ALR2d 666 (Annotation); Restatement of Torts, § 538, comment (d). And this is true even when made by the purchaser to the seller. *Caples v. Steel,* 7 Or 492; *Boelk v. Nolan,* 56 Or 229, 235, 107 P 689; *Akers v. Martin,* 110 Ky 335, 61 SW 465; *Garr v. Alden,* 139 Mich 440, 102 NW 950; 55 Am Jur 563-566, Vendor and Purchaser §§ 88-90; 56 ALR 443 (Annotation). Not only affirmative misrepresentations as to quantity is a basis for an action based upon fraud but also half-truths and concealment of special knowledge when there is a duty to

speak, and undertaking to speak, fails to tell or conceals the truth. When the purchaser undertakes to answer inquiries, he must tell the truth, and concealment under such circumstances is fraudulent. See *Dahl v. Crain,* 193 Or 207, 224, 237 P2d 939; *Boelk v. Nolan,* supra, at p 237; *Dean v. Cole,* 103 Or 570, 579, 204 P 952; 55 Am Jur 563, Vendor and Purchaser § 88. Half-truths are fraud even when not made in response to inquiries when made by one with superior knowledge. *Palmiter v. Hackett,* 95 Or 12, 185 P 1105, 186 P 581; *Larsen et al. v. Lootens et al.,* 102 Or 579, 595, 596, 194 P 699, 203 P 621; *Dean v. Cole,* supra; *Billups v. Colmer,* supra, at p 203; *Bond v. Graf,* 163 Or 264, 272-273, 96 P2d 1091; *Dahl v. Crain,* supra; *Johnson v. Cofer,* 204 Or 142, 151, 281 P 981; *Akers v. Martin,* supra; *Garr v. Alden,* supra; *Long v. Krause,* 109 Neb 846, 192 NW 1019; *Feeney v. Cook* (Mo), 242 SW2d 524; 55 CJS 180, Sales § 112; 56 ALR 443 (Annotation); 3 Pomeroy's Equity Jurisprudence (5th ed) 545, 549, § 901.

■ *Dahl v. Crain,* supra, is particularly in point. In this case the vendors were seeking specific performance of a contract for the sale of standing timber. The vendors sought to rescind the agreement, alleging fraud. In that case buyers, with the consent of sellers, obtained a third party to cruise the timber for both vendors and vendees to determine the amount thereof. The buyers then curtailed the authority of the cruiser so as to include in the cruise only timber which buyers could handle at a profit. Consequently, a considerable quantity of timber was omitted. As in the instant case, the sellers were not generally familiar with the timber business. The court comments that while the buyers might cruise for their own information and be under no obligation to report the result, but, that when they

undertook to secure a cruise for both parties "an entirely different situation was presented." The court further stated:

> "From then on, with respect to that matter, he [the cruiser] was acting not only for himself, but also as agent for defendants. It is elementary, that as an agent, he owed the utmost good faith to his principal. When the cruise was completed, he owed to defendants the positive duty of full disclosure regarding the same."

The same reasoning applies with equal force in this case. Defendant contends there is a difference between equitable and legal fraud. We believe there is none insofar as the making of false representations or the fraudulent concealment of material facts is concerned. In *Dahl v. Crain,* supra, at p 224, it was stated:

> "Though a buyer is not bound to answer a seller's inquiries relative to the property being purchased and sold, in the absence of special circumstances, yet if he does answer, he must answer truthfully. 55 CJ, Sales, 153, § 112; 55 Am Jur, Vendor and Purchaser, 563, § 88. He must make a full and fair disclosure and not conceal pertinent or material information. The rules are the same whether the sale is of real or personal property. In 55 Am Jur, Vendor and Purchaser, 564, § 88, it is stated:
>
> > " 'And so, if the vendor, being unacquainted with the land, inquires of the vendee what the land is worth or makes inquiry concerning some particular matter bearing upon its value, it becomes the purchaser's duty to speak the truth, if he undertakes to speak at all; in such cases a concealment or suppression of the truth, where coupled with any actual misrepresentation or overreaching, however slight, may be sufficient to entitle the vendor to have the deed set aside, the circumstances amounting to fraud or deceit. Fraud may be predicated upon an equivocal,

evasive, or misleading answer calculated to convey a false impression even though it may be literally true as far as it goes. A partial and fragmentary disclosure accompanied by wilful concealment of material and qualifying facts is not a true statement and is often as much a fraud as an actual representation.'

"The foregoing principles are of general application, and to apply them it is not necessary to establish a confidential relationship. Wholly apart from the question of agency, Johnson, having undertaken to speak, was required to make a complete disclosure. *Palmiter v. Hackett,* 95 Or 12, 17, 185 P 1105, 186 P 581."

■ Under the allegation hereinabove set forth, tested by the foregoing authorities, we are convinced that the complaint states a cause of action based upon fraud and do not find, therefore, any merit in defendant's contention in that regard.

■ Defendant next contends that it appears from the complaint that the action was not commenced within two years from the date the alleged fraud was discovered or could have been discovered by the exercise of reasonable diligence and hence is in violation of ORS 12.110, which provides that actions for fraud or deceit must be commenced within two years "from the discovery of the fraud or deceit." In the instant case the action was commenced more than ten years after the alleged fraud was consummated but according to the complaint within two years from the discovery thereof. The rule in this state is now well established that when the complaint is filed after the period provided by the statute, it must negative lack of diligence in the discovery of the fraud and in that regard must specifically and precisely plead the facts showing that the statute of limitations does not apply. *Huycke v. Latourette,* 215 Or 173, 177, 332 P2d 606; *Heard v.*

*Coffey,* 218 Or 275, 344 P2d 751. Further, the exercise of reasonable diligence to discover the fraud is essential. We are of the opinion that plaintiffs have met this burden by allegations VI, VII and VIII of their complaint. In view of plaintiffs' inexperience, the fact that a cruise was made, the nature of the land, and the manner in which the alleged fraud was discovered, we feel the allegations relating to diligence in any event provided questions for determination by the jury. When a positive representation is made as to the quantity of land in the absence of special knowledge of other facts and circumstances reasonably calculated to put the misrepresentee on notice, he is not required to make a survey, or in the case of timber, a cruise. In *Rackham v. Koch,* 125 Wash 451, 216 P 835, where the quantity of land was misrepresented, it was held that the misrepresentee was not required to make a survey. See also 54 CJS 192, Limitations of Actions § 189; *Lovejoy v. Isbell,* 73 Conn 368, 47 A 682. We are, therefore, of the opinion that defendant's contentions with respect to the statute of limitations cannot be sustained.

Defendant next claims the trial court erred in denying its motion to strike as a conclusion of law the amendment to the complaint "concealed the results as aforesaid" and in not allowing defendant's motion to make more definite and certain by alleging how defendant concealed said cruise. Whether there was concealment or not was a question of fact. Further, it is noted that the results were alleged to be concealed as "aforesaid," thereby referring to other portions of this pleading. We find these contentions without merit.

It is next claimed that the trial court erred in denying the motions to strike on grounds of irrelevancy and redundancy each of the sentences in the amend-

ments to paragraph VII of the complaint hereinbefore set forth and included in parentheses. We have already pointed out the necessity for special pleading with relation to the statute of limitations. We find the record free of error in this regard.

The defendant next asserts that the court erred in denying the motion for a directed verdict on several grounds. First it is contended that the complaint does not state a cause of action for the same reason as previously argued with respect to the demurrer. We have already disposed of these contentions, including the argument that the written agreement and deed negative fraud. Defendant further contends that no promise is alleged nor lack of intention not to perform. We must again point out that plaintiffs are not making a demand based upon a broken promise, but on a misrepresentation of a material fact. As further grounds it is contended that there was an absence of clear and convincing evidence sufficient to permit the submission of the case to the jury. In ruling on such a motion it is necessary that we view the evidence in the light most favorable to plaintiffs.

It appears that the plaintiff A. C. Heise was a small rancher with a seventh-grade education, and while he had a good knowledge of farming, he had no previous knowledge of the selling of timber. In 1939 he purchased the land in question for summer pasture, it being located nine miles from his home. The timber was in the draws and on the hillside of the land, which contained a high, rocky ridge with some rimrock. In late 1947 Heise, being in debt, wanted to sell the timber on this land. A short while before, defendant had purchased timber from his brother-in-law, Buster Burnett, it being located only three miles away, and had paid $4 per M for that timber. At that time the com-

pany was starting to buy and was generally familiar with timber in that area. Heise went to the offices of the company to see Mr. Kerns, its president, who determined the price to be paid for timber, where this conversation took place:

"Q When you got there how did you get hold of Mr. Kerns?

"A I imagine one of the employees pointed him out to me. There was a man coming out, and I asked him where Mr. Kerns' office was, and he said, 'That's Mr. Kerns just getting in the car right now.'

"Q And what did you do?

"A I went over and introduced myself and asked him if he was interested in buying some timber in the Ritter country.

"Q And what did he say?
"A He said yes, they were.

"Q And what did you do next, you and he?
"A He invited me into the office, and—

"Q Did you go in the office?
"A Yes, sir.

"Q And was anyone in the office besides you and he?
"A No, sir, there wasn't.

"Q And what was said there?
"* * * * *

"A I asked him what they were paying for timber, and he said 'Four dollars', and he said, 'Do you have a description of your land?' I said, 'I can mail it to you', which I did.

"Q What did he say he would do, then?
"A He said he would send a man over to cruise it, and he would come to see me."

It appeared at the time that Heise did not know how much timber there was on the section, nor had he obtained the opinion of anybody as to the quantity

thereof, nor did he attempt to ascertain the amount. Subsequent to the conversation he saw Mr. Hilger, the company cruiser, on the land, and a few days later Mr. Hilger came to see him at his home. At this time this conversation ensued:

"A Mr. Hilger said he had finished his cruise, and I said, 'Well, how much timber have I got, Clarence?' And he says, 'It comes to $6,150.00.'

"Q Did he offer to show you the cruise?
"A No, sir, he didn't.

"Q Was there any other talk about the cruise?
"A No, sir.

"Q Was there any dickering when you talked to Mr. Kerns, about what he should pay for the timber?
"A Only that he told me they were paying $4.00.

"Q Then did you ask for any more than that?
"A No, sir, I didn't.
"* * * * *

"Q Then were arrangements made where you were to sign up and get your money, and so on?
"A Yes sir; he told me to come in to the office and they would draw up a contract.

"Q Did you do that?
"A I did.

"Q And you did sign the contract?
"A I signed the contract.

"Q And later on did you sign a deed?
"A Yes, sir.

"Q And they paid you the money?
"A That's right.

"Q Now did you ever, up until the time they started to log this timber, have the timber measured, counted or added up in any way?
"A No, sir."

Hilger's cruise revealed 2,318,000 feet of pine timber. At $4 per M this timber would have come to over $9,200. Hilger reported his cruise to Kerns and went to see Heise where the conversation ensued as hereinabove set forth. The company instructions were not to divulge the result of cruises.

On cross-examination Hilger stated that: "Well, I told Mr. Heise—I know that I did—I told him it would be $6,150.00." From the fact that $6,150 is an odd figure, Heise assumed and believed that the result of the cruise showed the amount of timber on his land at $4 per M came to that amount. Heise, therefore, signed the contract and the deed, as prepared by the defendant, for a sale in the sum of $6,150. Heise was not represented, nor did he discuss the transaction with his own attorney. Mr. Kerns denied stating any price per M to Heise or that a cruise would be made and could not remember how the price of $6,150 was arrived at but claimed the timber was then worth only $2 per M, which, if true, would have resulted in the timber being worth $4,466. The timber was cut in 1958. During this time plaintiffs made no attempt to find out the quantity of timber, and it was not until the logging started in 1958 that in talking to the loggers Mr. Heise discovered there was more timber on the land. The exact amount was not determined until the deposition of Mr. Hilger was taken in this proceeding. Price being computed on the basis of $4 per M and determined by the Hilger cruise, plaintiffs would have received the additional amount of $3,122, the amount plaintiffs are claiming as damages.

Under these circumstances we are unable to say as a matter of law that there was insufficient evidence to go to the jury. Plaintiffs' evidence would, considering plaintiffs' version of the statements of Mr. Kerns

and the cruiser made to Mr. Heise, justify plaintiffs' assumption that the total price was based upon the Hilger cruise. Certainly such reported statements, if true, operated to create a false impression and resulted in a half-truth that was misleading. Defendant, when it had special knowledge of the situation, should, upon inquiry, have either expressly refused to divulge the amount of the cruise or in some manner informed plaintiffs that the cruise was confidential and a lump sum price was offered. We cannot condone this reported conduct.

Defendant contends that even so, the evidence is not clear and convincing as is required in cases of fraud. In *Cook v. Michael*, 214 Or 513, 527, 330 P2d 1026, it was held that "clear and convincing evidence means that the truth of the facts asserted is highly probable." Under the circumstances of this case we are unable to say as a matter of law that the plaintiffs' version of the case is not highly probable but, to the contrary, hold there was sufficient for a jury determination, and, hence, we find that the motion for directed verdict was properly overruled.

Defendant's assignments of error Nos. 6, 8 and 9 all relate to the admission on behalf of plaintiffs of evidence of other sales in the area at a lump sum of $4 per M to be determined by a cruise during 1948 subsequent to the date of the instant agreement of sale. The defendant opened up this line of inquiry when it had Mr. Kerns, its president, testify to the effect that he fixed the prices to be paid by the company and that he had never known of a sale made by the company for a lump sum to be determined by a cruise. Further than that, the testimony objected to under assignment No. 9 was proper to rebut the testimony of defendant's accountant. We find these assignments to be without

·merit. We further find No. 6 to be without merit and, in any event, not prejudicial since requiring the witness Hilger to read portions of the contract in evidence was something either counsel could have done in his argument to the jury.

■ The tenth assignment of error has to do with the refusal of the trial court to admit into evidence the testimony of defendant's accountant relating to certain exhibits also offered to show how the purchases of various lump sum and "stick sales" bought at a price per M were set up on its books. The stated purpose was to show that "this transaction has been handled as any other transaction is handled, open and above board." Defendant now claims it was also offered with reference to scienter and lack of intention to defraud, but the record fails to disclose any stated purpose other than the one we have related. The offer of proof was made as a single offer. The exhibits consisted of various ledger sheets, each relating to a separate timber transaction made with other people as well as with Heise, some of which had not been mentioned by plaintiffs' witness and were almost a year later. On each sheet is set forth a cost price per M with reference to that particular sale. If it was a "stick sale," it was the price actually paid. If it was a lump sum sale, someone in the company gave the accountant an estimate of the amount of timber based upon a cruise, and the accountant, based upon this estimate, would determine the price per M. In view of that, it appears that the ledger sheet with reference to that particular sale did not truly show the "record of an act, condition or event," as required by ORS 41.690. Further, in such event it would be misleading as indicating that the company paid for the timber at a price per M when such was not the fact. Some of the

sales referred to were not identified by other testimony as comparable sales. Further, the sheet with reference to the Heise sale constituted a self-serving declaration. Taken alone it indicated that the company paid $2.65 per M for 2,318,000 feet of the timber in question. Yet, no one contends that the price of the timber was even estimated on that basis. When there is a single offer of proof including material that is objectionable, the entire offer may be rejected. As was said in *Cosgrove v. Tracey,* 156 Or 1, 7, 64 P2d 1321, "The court is under no duty to sort out admissible matter, but when a portion of such testimony is incompetent may reject the testimony as a whole." See also the cases there cited. Defendant at the close of its offer and as a part thereof offered the several exhibits referred to "severally and collectively." It is contended that this operated to split up the offer of proof. To so hold would violate the reason for the rule for the trial court would then be required to separate the wheat from the chaff. In compliance with the rule, these exhibits should have been offered one at a time. We find this assignment without merit.

■ The next assignment has to do with the failure of the court to grant defendant's motion for a new trial based upon alleged misconduct of the jury in not following instructions given by the trial court to the effect that the contract and deed negatived a cruise or any certain price for 1,000 board feet, and that plaintiffs were bound by this writing in accordance with its reasonable meaning and were required to use due care for their own protection. It is the law that instructions, even if erroneous, when not followed constitute grounds for a new trial. *Tou Velle v. Farm Bureau Co-op. Exchange,* 112 Or 476, 229 P 83, 229 P 1103; *Columbia Co. v. Ross Island Co.,* 145 Or 96,

108, 25 P2d 911. Assuming without deciding that the instructions were correct, it does not necessarily result that the jury refused to follow these instructions. First, the fact that it does not appear from the contract and deed that the sale was for other than a lump sum did not foreclose plaintiffs from an action for damages for fraud in inducing the sale because of prior misrepresentation as the amount of timber on his land by one possessing superior knowledge, as has been previously pointed out. Second, the fact that the contract and deed were consistent with a lump sum sale did not convey notice to plaintiffs that the amount of the timber was other than they claim they were fraudulently led to believe and was not, therefore, inconsistent with the alleged fraud. Further than that, the question of the reasonable care to be exercised by plaintiffs for their own protection was submitted to the jury under appropriate instructions. Had the contract recited that the amount to be paid was not based upon a cruise, then, of course, the instruments by their very terms would have negatived the fraud. The fact there was a total sum stated was only a fact from which a permissible inference could be drawn in view of all the circumstances. In determining the effect of these instructions, they are to be read in connection with all the other instructions in the case. For example, the court instructed the jury to the effect that while it was a rule of law that "the written agreement usually replaces all oral negotiations" and that the "parties are then bound" and cannot "vary or contradict," the court also told them there was a "recognized exception to the rule when fraud is proved." The court further instructed that if all the elements of fraud as explained were established, "then and in such event the fact that plaintiffs read, understood and signed the written

agreement and the deed is not a defense." We cannot, therefore, sustain this assignment.

 Defendant next assigns as error the allowance of plaintiffs' motions to amend their complaint by interlineation with respect to damages so as to conform to the proof. Plaintiffs, by so doing, reduced their demand from $5,158.48 to $3,122, claiming plaintiffs were entitled to recover from defendant the difference between the price paid of $6,150 and the value of the pine timber as determined by the cruise at $4 per M. Defendant says that this in effect improperly resulted in the adoption of the "benefit of the bargain" rule when the "out of pocket" rule applied. The trial judge had formerly ruled that plaintiffs were not entitled to recover the difference between the amount received, $6,150, and the actual value of all the timber on his land but were entitled to recover the difference between the amount received and the amount they would have received if paid for the amount of pine timber shown by the company cruise (or the sum of $3,122). The result is that plaintiffs' recovery was even less than under an application of the "out of pocket" rule, and, therefore, was, to that extent, favorable to defendant. See *Horner v. Wagy,* 173 Or 441, 447, 146 P2d 92. We find no merit in this assignment.

We have carefully considered the remainder of defendant's assignments of error, all relating to the giving or failure to give certain instructions. We deem them without merit and, hence, reject them. On the contrary, we find the instructions as a whole properly presented the case to the jury. It follows, therefore, that the judgment of the trial court is affirmed.